Filed 9/20/13  P. v. Zapata CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047277 |
| v. | (Super. Ct. No. 05WF0647) |
| JESUS DAMIAN ZAPATA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed in part and reversed in part with directions.

Edward J. Haggarty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

\*      \*      \*

A jury convicted defendant Jesus Damian Zapata of felony false impersonation (Pen. Code, § 529, subd. (a)(3) (formerly § 529, subd. 3, hereafter former section 529(3); all further statutory references are to this code unless otherwise indicated), but found him not guilty of carrying a concealed weapon in a vehicle, and street terrorism. The trial court thereafter found true allegations defendant had 11 prior serious or violent felony convictions (§§ 667, subds. (d), (e)(2), 1170.12, subds. (b), (c)(2)(A)) and had served a prior prison term (§ 667.5, subd. (b)). It dismissed the allegations of two prior serious felonies (§ 667, subd. (a)(1)) and sentenced defendant to an indeterminate term of 25 years to life, plus a one-year term under section 667.5, subdivision (b).

Defendant contends his false impersonation conviction should be reversed because substantial evidence does not support it; section 148.9 is a more specific statute that precludes conviction under former section 529(3); the court erred in failing to instruct sua sponte on the lesser included offense of attempted false impersonation and refusing to reduce the offense to a misdemeanor; and that the prosecution of this case, along with the case against him in Los Angeles County for attempted murder, violated section 654. He further argues he is entitled to automatic resentencing under the recently passed Proposition 36 and principles set forth in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). We agree with defendant's last contention and remand the matter for resentencing but in all other respects affirm the judgment.

FACTS

In March 2005, defendant was driving his vehicle when he was stopped by police officer Ramiro Vergara for not wearing a seat belt and failing to signal before turning. A DMV check revealed the vehicle was registered to Juan Zapata, defendant's brother, and that the registration was expired. Defendant identified himself as Juan

2

Zapata, with a birth date of December 18, 1984, and told Vergara the vehicle belonged to his girlfriend. A records check showed Juan Zapata did not have a driver's license.

After backup arrived, Vergara found a pipe in defendant's pocket, plus bullets and a loaded gun in the vehicle. Defendant was arrested and taken to the police station, where he maintained his name was Juan Zapata.

Vergara completed a prebooking form with the information defendant provided. He collected evidence from defendant's hands to test for gunshot residue (GSR) under the name of Juan Zapata and sent it to the lab for testing under that name. A DNA sample was also taken from defendant and booked under the name Juan Zapata. Fingerprints later revealed defendant was actually Jesus Zapata with a birth date in 1978. Upon being confronted with the information, defendant pleaded the Fifth Amendment.


DISCUSSION

*1. Sufficiency of the Evidence*

Former section 529(3) provides, in relevant part: "Every person who falsely personates another in either his private or official capacity, and in such assumed character . . . [¶] . . . [¶] 3. Does any other act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person[.]" The offense may be "either a misdemeanor or a felony" (*People v. Casarez* (2012) 203 Cal.App.4th 1173, 1179) and the terms "personate" and "impersonate" are synonymous (*id*. at p. 1179, fn. 3). Defendant argues his conviction should be reversed because no substantial evidence exists that he "committed the additional act necessary for a [former] section 529[(3)] . . . violation." We disagree.

The extent of the "additional act" has been the subject of considerable case law. The statute does not require the additional act be intended by the impersonator to

3

subject another person to liability or to create a benefit to himself; it only requires that an additional act *might* result in that liability or benefit. (*People v. Rathert* (2000) 24 Cal.4th 200, 205-206 ["paragraph 3 is framed in language reasonably susceptible of only one interpretation: that the Legislature sought to deter and to punish all acts by an impersonator that might result in a liability or a benefit, whether or not such a consequence was intended or even foreseen. No fewer than seven times does the word 'any' appear in the statute . . . . The impersonator's act, moreover, is criminal provided it *might* result in any such consequence; no higher degree of probability is required"].)

In *People v. Cole* (1994) 23 Cal.App.4th 1672, the court held that the defendant's act of providing a false middle name and birth date to the arresting officer did not qualify as additional acts under the statute. (*Id.* at p. 1676.) By contrast, the defendant in *People v. Robertson* (1990) 223 Cal.App.3d 1277 (*Robertson*), abrogated on another ground in *People v. Rathert*, *supra*, 24 Cal.4th at pp. 205-208, falsely impersonated his brother upon being arrested for stealing a truck and continued to do so at arraignment by signing his brother's name on the booking and release forms, resulting in his brother's incarceration when the defendant failed to appear at the scheduled hearing. *Robertson* upheld the defendant's conviction, finding the additional acts beyond the initial impersonation were sufficient to satisfy the statute. (*Robertson*, at pp. 1282-1283.)

Similarly, in *People v. Chardon* (1999) 77 Cal.App.4th 205, the court held that by signing her sister's name on a traffic citation, the defendant "exposed her sister not only to liability for the citation but also to potential criminal liability for failing to appear at the scheduled hearing." (*Id.* at p. 212.) More recently, in *People v. Stacy* (2010) 183 Cal.App.4th 1229, the defendant, who used her cousin's name when stopped by the police, refused to take a second mandatory breathalyzer test or provide a blood sample. The court held the defendant's refusal to complete the mandatory testing put the impersonated individual "at risk of liability for refusing to submit to and/or complete the

4

chemical testing requirements under Vehicle Code sections 23612 and 23577. Indeed, such charges were ultimately levied against [the] defendant when her true identity was learned." (*Id*. at pp. 1235-1236, fn. omitted; but see *People v. Guion* (2013) 213 Cal.App.4th 1426, 1435 [providing driver's license in name of impersonated person did not qualify as "other act" under former section 529(3)]; *People v. Casarez*, *supra*, 203 Cal.App.4th at p. 1190 [offering brother's birth certificate did not satisfy former section 529(3)'s requirement of another act].)

Here, the uncontroverted evidence shows defendant not only fraudulently misidentified himself to Vergara, but that he continued the fraud during the post-arrest process. He allowed GSR to be taken from his hands, then be booked and sent to the crime lab for testing under his brother's name. Like the act of signing the citation in *Chardon*, this was sufficient to place his brother in significant legal jeopardy because, as the trial court found, he could have been subjected to criminal prosecution for the crimes charged in this case, i.e., possession of a concealed firearm in a vehicle, if defendant had been released without his true identity having been established.

Defendant maintains he committed no affirmative act and merely "acquiesce[d] in the booking process and the collection of evidence instigated by law enforcement" and had he not done so, he would "have committed 'additional acts' exposing his brother to potential criminal liability" for resisting an officer in the performance of his duties (§ 148) as shown by *People v. Stacy*. Former section 529(3), however, does not require an "affirmative" act but only an act that might subject the person falsely personated to "become liable to any . . . prosecution . . . or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating . . . ." Defendant's act of consenting to have GSR be taken from him, be booked into evidence and submitted for testing in his brother's name while masquerading as his brother satisfies the requirement as it subjected his brother to possible criminal liability.

5

As for defendant's claim that he was required to comply with the collection of evidence, it could be argued the defendants in *Robertson* and *Chardon* had to perform the additional acts of signing a booking form and a release form, or a traffic citation. But that misses the point, which is that these acts were performed while under the guise of another person who would be responsible for their consequences. Defendant was not required to impersonate his brother, and choosing to do so while performing an act of legal significance placed his brother at risk. This act was not merely part of defendant's initial impersonation of his brother, it was an additional act that heightened his brother's criminal liability by making him potentially responsible not only for failing to wear a seat belt and signaling before turning, but also for possessing a concealed firearm in a vehicle. Under these facts, defendant was not, as he asserts, passively maintaining his false identity, he was providing further evidence *incriminating* his brother. What defendant describes as a lack of affirmative representation was in fact a purposeful failure to correct the fallacy he had intentionally created.

By permitting GSR taken from him be booked into evidence under his brother's name, defendant exposed his brother to significant criminal liability. Because this act satisfied the statute and provided substantial evidence to support defendant's conviction, we need not discuss his additional claim that his act of allowing his DNA be taken did not qualify as the required act because it would have "positively identif[ied] him contrary to his assertion that he was Juan Zapata."

*2. Preclusion of Former Section 529(3) Conviction by Section 148.9*

Defendant contends his conviction is barred by section 148.9, which makes it a misdemeanor for anyone to falsely represent or identify themselves as someone else to a police officer "upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the

6

investigating officer" (§ 148.9, subd. (a)), because it is a more specific statute than former section 529(3).  We are not persuaded.

Under the rule set forth in *In re Williamson* (1954) 43 Cal.2d 651 (*Williamson*), "if a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute.  In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be prosecuted under either statute.  [Citation.] . . . 'The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent.  The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply.  Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and "requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision . . . .'"'" (*People v. Murphy* (2011) 52 Cal.4th 81, 86.)

"Absent some indication of legislative intent to the contrary, the *Williamson* rule applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.'" (*People v. Murphy*, *supra*, 52 Cal.4th at p. 86.)  Even if the general statute contains an element not within the special statute, "'[i]t is not correct to assume that the [*Williamson*] rule is inapplicable . . . .  Rather, the courts must consider the *context* in which the statutes are placed.  If it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute.'" (*Id.* at p. 87.)

7

Defendant acknowledges former section 529(3) contains elements not included in section 148.9. (See *People v. Guion*, *supra*, 213 Cal.App.4th at p. 1436 ["statutory elements of former section 529(3)—false personation and the commission of an additional act that might expose the person who is falsely impersonated to liability or benefit the defendant—do not include all of the elements of section 148.9"]; *Robertson*, 223 Cal.App.3d at p. 1281 [section 148.9 did not bar former section 529(3) prosecution where section 529 had numerous elements not in section 148.9, including "other act" element, while section 148.9 requires only "the act of impersonation before a peace officer upon a lawful detention or arrest, for the purpose of evading the process of the court or proper identification"].) Yet he argues *Robertson*'s analysis as to the first test is not "convincing" and urges us not to follow it. His failure to provide any reasoned legal argument or citation of authorities forfeits the issue. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Defendant's primary argument is he satisfied the second *Williamson* test because "violation of section 148.9 will *commonly result in* a violation of [former] section 529[(3)]." Not so because former section 529(3) requires the performance of an additional act not contained in section 148.9, i.e., an act that might subject the person impersonated to liability. "[I]f the more general statute contains an element that is not contained in the special statute and that element would not commonly occur in the context of a violation of the special statute, we do not assume that the Legislature intended to preclude prosecution under the general statute. In such situations, because the general statute contemplates more culpable conduct, it is reasonable to infer that the Legislature intended to punish such conduct more severely." (*People v. Murphy*, 52 Cal.4th at p. 87.)

According to defendant, "[i]t is a reasonably common occurrence for people who wrongly choose to give a false name to a peace officer to engage in some other act that could potentially lead to civil or criminal liability to the person falsely

8

impersonated." That may be true but it does not follow that such an act commonly occurs "in the context of a violation of" section 148.9 (*People v. Murphy*, *supra*, 52 Cal.4th at p. 87), which is complete once a lawfully detained or arrested defendant falsely represents or identifies himself to a peace officer to evade the court's process or proper identification.

The contexts of the two statutes are also different. In determining section 148.9 did not bar application of former section 529(3) under the *Williamson* rule, *Robertson* examined the statutory schemes of the two statutes and determined the essence of former section 529(3) "is to punish the type of fraud perpetrated by means of impersonation of another person," while that of section 148.9 "is to punish wrongful interference with the administration of justice." (*Robertson*, 223 Cal.App.3d at p. 1282.)

Defendant maintains "the nature of these offenses remains very similar." He cites the observation in *Lee v. Superior Court* (2000) 22 Cal.4th 41, that "statutes prohibiting impersonation have two purposes. One is to prevent harm to the person falsely represented; the second is to ensure the integrity of judicial and governmental processes." (*Id.* at p. 45.) According to defendant, the second purpose "clearly overlaps" with section 148.9's "purpose" to "punish wrongful interference with the administration of justice." But *Robertson* did not say that was section 148.9's purpose; it merely said that was its "essence." (*Robertson*, 223 Cal.App.3d at p. 1282.) In actuality, "'[t]he purpose of [section 148.9] is to require the defendant to give "sufficient information to allow law enforcement to locate the person if he or she does not appear in court."'" (*People v. Christopher* (2006) 137 Cal.App.4th 418, 429.) The purposes of the two statutes are thus distinct.

Because a violation of section 148.9 would not necessarily or commonly result in a violation of former section 529(3), the *Williamson* rule does not apply.

9

*3. Failure to Sua Sponte Instruct on Attempted False Impersonation*

Defendant asserts the court prejudicially erred in failing to instruct the jury sua sponte on the lesser included offense of attempted false personation because Vergara suspected defendant was not who he claimed to be and ran his fingerprints, which established his true identity. The contention lacks merit.

A trial court must instruct on its own motion on any necessarily included or attempted offense when there is evidence sufficient to support a conviction on such an offense as opposed to the charged offense; in other words, when there is evidence from which a reasonable jury could conclude that the lesser offense, but not the greater, was committed. (*People v. Breverman* (1998) 19 Cal.4th 142, 177.) Attempted false personation is not a lesser included offense of false personation because the attempted crime requires specific intent (*People v. Bailey* (2012) 54 Cal.4th 740, 752-753; *People v. Jones* (1999) 75 Cal.App.4th 616, 627; *People v. Strunk* (1995) 31 Cal.App.4th 265, 271), whereas false personation does not (*People v. Rathert*, *supra*, 24 Cal.4th at pp. 205-208).

Moreover, the evidence does not show defendant was guilty only of the lesser and not the greater offense. We have concluded substantial evidence supports defendant's conviction for false personation because he falsely identified himself to the officer and allowed GSR evidence to be taken, booked, and processed under his brother's name. "'An attempt to commit a crime consists of a specific intent to commit the crime, and a direct but ineffectual act done towards its commission.'" (*People v. Jones*, *supra*, 75 Cal.App.4th at p. 627.) Here, neither act was ineffective. The fact Vergara suspected defendant had falsely identified himself does not show defendant committed an ineffectual act and does not absolve him of the greater offense. Accordingly, the court did not have to instruct supa sponte on attempted false personation.

10

*4. Denial of Motion to Reduce Conviction to a Misdemeanor*

The court denied defendant's motion to reduce his false personation conviction from a felony to a misdemeanor under section 17, subdivision (b), stating it had "carefully weighed the intent of [former section] 529(3)" to determine whether "this [was] the type of conduct that should be [reduced to a misdemeanor under 17[, subd.] (b)[.] [¶] And in my humble opinion, the answer to that question is a sharp no. That if he had gotten away with the false personation . . . he would have subjected his brother to liability for the guns in the car, because everybody would have thought it was his brother driving the car. Whether or not the brother knew the guns were in the car or not, or, frankly, whether or not the brother put the guns in the car, his conduct would have subjected him to that for the defendant being in the car."

Defendant contends the court erred in so ruling because (1) the jury's not guilty verdict on the gun possession charge suggested it did not believe he knew a gun was in the vehicle, and (2) the evidence shows there was only one gun, not multiples ones as indicated by the court's comments. We review the court's denial of defendant's motion for abuse of discretion. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.) In exercising its discretion, a court must consider, among other things, "'the nature and circumstances of the offense'" (*id.* at p. 978), as well as general sentencing objectives such as "[p]rotecting society" and "[p]unishing the defendant" (*id.* at p. 978, fn. 5). "'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" (*Id*. at pp. 977-978.) Defendant failed to make the requisite showing.

The record shows the court considered both the nature and circumstances of defendant's false personation conviction, which defendant acknowledges was "serious[]," 

11

and the general objectives of sentencing, including protecting defendant's brother and punishing defendant. In particular, it found defendant's brother could have been subjected to prosecution had defendant succeeded in impersonating him. Neither the circumstance that the jury found defendant not guilty of the possession of a firearm charge, possibly reflecting its belief he was unaware a gun was in the car, nor the court's references "to guns in plural," negate the fact defendant's false impersonation of his brother could have subjected his brother to prosecution for that offense.

Defendant maintains the denial of his motion was "arbitrary and capricious" given Vergara's suspicions regarding defendant's identity. He states he was unlikely "to . . . injure[] anyone or impede[] law enforcement" because his attempt to impersonate his "much younger brother was almost certain to fail . . . ." We decline defendant's invitation to reweigh the evidence and substitute our judgment for that of the trial court. Defendant failed to show the court's decision to deny his motion was irrational or arbitrary. Absent such a showing, we presume the court acted to achieve legitimate sentencing objectives. (*People v. Alvarez*, *supra*, 14 Cal.4th at pp. 977-978.)

*5. Impermissible Multiple Prosecution Under Section 654*

During trial in this action, defendant moved to dismiss the information on the ground it violated section 654 and *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*). He noted that after he was arrested and charged in this case, he was charged in Los Angeles County with attempted murder with a firearm use enhancement for an incident occurring in January 2005. He was subsequently convicted of attempted murder and second degree robbery in the Los Angeles case. In his motion, defendant asserted that during the Los Angeles trial, Vergara testified about the traffic stop and the recovery of the gun in the present case and Edward Buse, a forensic scientist with the Orange County crime lab, testified about the results of DNA analysis performed on the gun, which was significant because defendant's DNA profile was apparently recovered from a

12

wig and beanie cap worn by the shooter in the Los Angeles case. Other than confirming these two witnesses testified in the Los Angeles action, the record contains no evidence as to what Vergara and Buse testified to. The court denied the motion, finding the Orange County and Los Angeles County crimes were not connected in their act or commission within the meaning of section 954 and that joinder was not required although it was permissible.

Defendant contends this was error because the gun found in the vehicle he "was driving, and for which he was charged with possession as a felon, was the same one used in the attempted murder" prosecution in Los Angeles County, plus Vergara and Buse testified at both trials. We disagree.

Section 654, subdivision (a) prohibits both multiple punishment and multiple prosecution. In *Kellett*, *supra*, 63 Cal.2d 822, the Supreme Court, construing section 654 in the context of the legislative policy of section 954, explained multiple prosecution is prohibited to avoid "needless harassment and the waste of public funds . . . ." (*Kellett*, at p. 827.) Where "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Ibid*., fn. omitted.) Nevertheless, "the offenses must be transactionally related, and not just joinable, before the *Kellett* rule applies." (*People v. Valli* (2010) 187 Cal.App.4th 786, 796 (*Valli*).)

Whether the *Kellett* rule applies "must be determined on a case-by-case basis." (*Valli*, *supra*, 187 Cal.App.4th at p. 797.) "Appellate courts have adopted two different tests to determine a course of conduct for purposes of multiple prosecution." (*Ibid*.) "One line of cases finds *Kellett* not applicable where the offenses are committed at separate times and locations." (*Ibid*.) The other line of cases applies an "evidentiary

13

test" requiring consideration of "the totality of the facts and whether separate proofs were required for the different offenses." (*Id.* at pp. 798, 799.) We review de novo the legal question of whether section 654 applies. (*Id.* at p. 794.)

Defendant's multiple-prosecution claim fails both tests. Because the robbery and attempted murder in Los Angeles occurred at a different time and place (January 2005 in Los Angeles) than the charges in the present case (March 2005 in Orange County) and were committed against different victims, his claim fails the "'different time/different place'" test. (*Valli*, *supra*, 187 Cal.App.4th at p. 798.) Nor did defendant satisfy the evidentiary test, given the absence of any transcript or other competent evidence to establish what Vergara and Buse testified about in the Los Angeles case.

Even if there was such evidence, "[s]imply using facts from the first prosecution in the subsequent prosecution" is not enough to pass the evidentiary test. (*Valli*, *supra*, 187 Cal.App.4th at p. 799.) Instead, "[d]ifferent evidentiary pictures are required . . . ." (*Ibid.*) The evidentiary picture in *Valli* was "one [prosecution for] a shooting at night and the other of police pursuits in the following days." (*Ibid.*) The evidentiary picture in the case before us is one prosecution for robbery and attempted murder at one time and place with one victim and a second for false personation of a different victim, gun possession by a felon, and street terrorism at a different time and at a different place. Aside from Vergara and Buse, "[d]ifferent witnesses would testify to the events," as in *Valli*. (*Ibid.*) Nor did the evidence needed to prove robbery and murder—that defendant was the robber and shooter—supply proof defendant committed false personation, possession of a gun by a felon, or street terrorism. (See *id.* at p. 800.)

*In re Grossi* (1967) 248 Cal.App.2d 315, on which defendant relies, does not persuade us otherwise. Grossi used a revolver to rob a gas station attendant and was apprehended with the revolver four hours later after he committed a traffic violation and attempted to elude police. He was charged with armed robbery and being a felon in

14

possession of a firearm; the robbery charge was dismissed for lack of prosecution; and he pled guilty to and was sentenced for the other offense. After Grossi was recharged with and convicted of armed robbery, he sought a writ of habeas corpus. The Court of Appeal held the second prosecution for robbery was barred because the record "fairly reek[ed] of a single course of conduct, indivisible for purpose of section 654," and "nothing in the record to support [the People's] hypothesis" that between the robbery and the arrest Grossi had "start[ed] a new course of conduct." (*Id.* at pp. 321-322.) Unlike *Grossi*, the crimes at issue here did not "'arise out of the same act, incident, or course of conduct'" for purposes of the section 654 bar to multiple prosecutions. (*People v. Turner* (1985) 171 Cal.App.3d 116, 129.)

*6. Automatic Nondiscretionary Resentencing Under Proposition 36*

Defendant seeks automatic resentencing under Proposition 36, the Three Strikes Reform Act of 2012 (the Act), a voter initiative that amended sections 667 and 1170.12 and added section 1170.126. The sole published appellate decision addressing this issue is *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*), review denied May 1, 2013, S209069, review having been recently granted in two other previously published cases: *People v. Conley* (2013) 215 Cal.App.4th 1482 [156 Cal.Rptr.3d 508], review granted August 14, 2013, S211275 and *People v. Lewis* (2013) 216 Cal.App.4th 468 [156 Cal.Rptr.3d 747], review granted August 14, 2013, S211494.

Whether the Act applies retroactively is a question of law that we review de novo. (*People v. Failla* (2006) 140 Cal.App.4th 1514, 1520.) "'In interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. [Citation.] Thus, [1] "we turn first to the language of the statute, giving the words their ordinary meaning." [Citation.] [2] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] [3] When the language is ambiguous, "we refer to other

15

indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation]' [Citation.] [¶] In other words, our 'task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent.'" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900-901.)

Under the Act, a three strikes sentence may only be imposed where the current offense is a serious or violent felony, or where the prosecution pleads and proves a listed exception. (See §§ 667, subd. (e)(2)(C); 1170.12, subd. (c)(2)(C); *Yearwood*, *supra*, 213 Cal.App.4th at p. 170.) Although the Attorney General asserts retroactive application of the Act would deprive the prosecution of the ability to fulfill the requirement to "'plead[] and prove[]'" one of these exceptions, she does not identify any particular exception that would apply to defendant's case. Nor has our independent review revealed any relevant exception. Defendant's current offense of false impersonation is not a controlled substance or felony sex offense and there is no evidence he used or armed himself with a firearm or "intended to cause great bodily injury to" someone. (§§ 667, subd. (e)(2)(C)(i)-(iii), 1170.12, subd. (c)(2)(C)(i)-(iii).) Defendant's prior convictions as alleged by the prosecution in the amended information also did not satisfy any of the exceptions as they did not involve "[a] 'sexually violent offense,'" a sexual or lewd and lascivious act involving a child under the age of 14, homicide, "[s]olicitation to commit murder," "[a]ssault with a machine gun on a peace officer or firefighter," "[p]ossession of a weapon of mass destruction," or a felony punishable by life imprisonment or death. (§§ 667, subd. (e)(2)(C)(iv)(I)-(VIII), 1170.12, subd. (c)(2)(C)(iv)(I)-(VIII).) Thus, because none of the exceptions applied, and defendant's current offense was neither serious nor violent, he would not have been sentenced to 25 years to life had he been sentenced after the Act's effective date of November 7, 2012.

The Act also added section 1170.126, which creates a procedure for "persons presently serving an indeterminate term of imprisonment" (*id*., subd. (a)) under the "Three Strikes" law to petition to recall their sentence and be sentenced as a second

16

strike offender if the requirements are met. (*Yearwood*, *supra*, 213 Cal.App.4th at p. 170.) The trial court has discretion to deny the petition even if the objective criteria is met (§ 1170.126, subd. (f)), but sentencing under sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C) is mandatory once a defendant has met the requirements. (*Yearwood*, at pp. 170-171, 176.)

Defendant contends he is not required to petition for a recall of his sentence under newly enacted section 1170.126 but is instead entitled to mandatory resentencing under section 667, subdivision (e)(2)(C) given that neither his current offense nor his strike priors were disqualifying convictions listed in section 667, subdivision (e)(2)(C) or section 1170.12, subdivision (c)(2)(C). He relies on *Estrada*, which held if the Legislature amends a statute to mitigate the punishment for a particular crime, it must be assumed it intended the statute be retroactively applied to *all* defendants whose judgments of conviction were not final at the time of the statute's operative date if there is no other evidence to the contrary. (*Estrada*, *supra*, 63 Cal.2d at pp. 742-748.) This holding applies whenever "the amendatory statute mitigates punishment and there is no saving clause . . . ." (*Id.* at p. 748.)

The Attorney General responds that "amended sections 667 and 1170.12 apply only prospectively to persons sentenced on or after November 7, 2012[, as s]tatutory amendments are not 'retroactive, unless expressly so declared.'" (Citing § 3; *People v. Brown* (2012) 54 Cal.4th 314, 319.) She asserts that because "[t]he only provision of the Act that provides retroactive relief is section 1170.126[,] . . . it is there— and only there—that [defendant] must turn."

The Attorney General relies on *Yearwood*. There, as here, the defendant would have been entitled to second strike sentencing under the Reform Act if he had first been sentenced in the trial court after the effective date of the Reform Act. But Yearwood, like defendant, had already been sentenced and his appeal was pending on the date the act became effective. In deciding whether the Act applied retroactively,

17

*Yearwood* noted that "[r]eviewing courts have departed from the *Estrada* standard 'only when new legislation has included an express saving clause or its equivalent or when some other consideration clearly dictated a contrary result.' [Citations.] Yet, the Legislature is not 'always bound to use the same method, or to enact an explicit saving clause . . . .'" (*Yearwood*, *supra*, 213 Cal.App.4th at p. 173.)

According to *Yearwood*, "[t]he Act does not contain a saving clause or refer to retroactivity. It does not contain a provision explicitly referring to persons . . . who were convicted of a felony and sentenced to an indeterminate life term as a third strike offender prior to the Act's effective date but whose judgments are not final because direct appellate review is pending." (*Yearwood*, *supra*, 213 Cal.App.4th at p. 172.) Nevertheless, it concluded "[t]he *Estrada* rule does not apply to the Act because section 1170.126 operates as the functional equivalent of a saving clause. Section 1170.126 is not ambiguous. The voters intended a petition for recall of sentence to be the sole remedy available under the Act for prisoners who were serving an indeterminate life sentence imposed under the former three strikes law on the Act's effective date without regard to the finality of the judgment." (*Ibid.*)

While we do not disagree with *Yearwood* that sections 667 and 1170.12 "must be examined within the context of the entire Act" (*Yearwood*, *supra*, 213 Cal.App.4th at p. 175), we disagree that section 1170.126 is unambiguous. *Yearwood* based this conclusion on subdivision (b), which provides that "[a]ny person serving an indeterminate term of life imprisonment" imposed for a third strike conviction "may file a petition for a recall of sentence." (§ 1170.126, subd. (b).) But in order for the *Estrada* rule not to be implicated, the Legislature must "*clearly signal[]* its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793, fn. omitted, italics added.)

*Yearwood* acknowledged the Act does not contain an express saving clause. (*Yearwood*, *supra*, 213 Cal.App.4th at p. 172.) And although *Nasalga* did not explain

18

what constitutes the "equivalent" of an express saving clause, it held that absent such clause, the "'quest for legislative intent[]'" requires "'that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.'" (*People v. Nasalga*, *supra*, 12 Cal.4th at p. 793.) Section 1170.126, subdivision (b)'s phrase "person serving an indeterminate term of life imprisonment" fails to satisfy this standard because it cannot be determined whether it pertains to prisoners serving judgments not yet final or only to those serving sentences that are final.

*Yearwood* cited two cases in which the ballot initiative or statute under consideration utilized express language to make an ameliorative statute prospective. The first of these, *People v. Floyd* (2003) 31 Cal.4th 179 (*Floyd*), held the prior Proposition 36, approved by voters on November 7, 2000, applied prospectively only despite its ameliorative effect because it contained the following express saving clause: "'Except as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively.'" (*Floyd*, at p. 182.) *Floyd* concluded the plain language of this saving clause "reveals an intent to avoid the *Estrada* rule." (*Id*. at p. 185.) The second case, *People v. Cruz* (2012) 207 Cal.App.4th 664, addressed a statutory amendment containing a similar express saving clause that the changes apply "'prospectively to any person sentenced on or after October 1, 2011.'" (*Id*. at p. 668, citing § 1170, subd. (h).) Given this explicit language, the court held "even assuming the Act mitigates punishment, the rule of *Estrada* does not apply." (*Id*. at p. 672, fn. omitted.) The fact the Act here contains no similar language provides persuasive evidence the electorate intended section 667, subdivision (e)(2)(C) to apply to nonfinal judgments.

*Yearwood* also observed "[c]ourts have departed from the *Estrada* rule . . . where the legislation did not include an express saving clause. Most recently, in *Brown*, *supra*, 54 Cal.4th 314 . . . , the Supreme Court held that the *Estrada* rule did not require retroactive application of 'a statute increasing the rate at which prisoners may

19

earn credit for good behavior . . . . [Citation.] It reasoned that this statute 'does not represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent. . . . Instead of addressing punishment for past criminal conduct, the statute addresses *future conduct* in a custodial setting by providing increased incentives for good behavior.'" (*Yearwood*, *supra*, 213 Cal.App.4th at p. 174, citing *Brown*, at p. 325.) Because awarding the credit retroactively, for time spent in custody before the effective date of the amendment, would not further that purpose, *Brown* held there is no logical basis for inferring that the Legislature intended the amended statute to apply retroactively. (*Brown*, at p. 325 & fn. 15.)

Here, in contrast, retroactive application of section 667, subdivision (e)(2)(C) is consistent with the proponents arguments in favor of the Act. As set forth by *Yearwood*, the argument included in the Voter Information Guide were: "(1) 'make the punishment fit the crime'; (2) 'save California over $100 million every year'; (3) 'make room in prison for dangerous felons'; (4) 'law enforcement support'; (5) 'taxpayer support'; and (6) 'tough and smart on crime.'" (*Yearwood*, *supra*, 213 Cal.App.4th at p. 171 [citing the "Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36, p. 52, capitalization omitted"].) Applying the Act retroactively would "'make the punishment fit the crime'" and be "'tough and smart on crime'" (*ibid*) by precluding third strike sentences for offenders whose current and prior offenses are nonviolent and less serious, which in turn would "'make room in prison for dangerous felons'" and support law enforcement, as well as save California and taxpayers money by reducing prison overcrowding (*ibid*.). It would also enhance public safety by ensuring that the truly dangerous repeat offenders serve indeterminate life terms, while still imposing doubled prison terms on less serious recidivists. A logical basis thus exists from which to infer the electorate intended the Act to apply to nonfinal judgments.

20

*Yearwood* asserts the opposite view, noting the ballot arguments showed "[e]nhancing public safety was a key purpose of the Act." (*Yearwood*, *supra*, 213 Cal.App.4th at p. 175.) According to *Yearwood*, "[g]iving . . . section[] 667[, subdivision (c)(2)(C)] . . . prospective-only application supports [that] . . . purpose by reducing the likelihood that prisoners who are currently dangerous will be released from prison due to the Act. . . . [S]ection[] 667[, subdivision (c)(2)(C)] do[es] not provide the trial court with any discretion to impose a third strike sentence based on a finding of current dangerousness. In contrast, section 1170.126 entrusts the trial court with discretion that may be exercised to protect the public. . . . [¶] If . . . section[] 667[, subdivision (c)(2)(C) is] given retroactive application, prisoners in [Yearwood's] procedural posture would be entitled to automatic resentencing as second strike offenders without any judicial review to ensure they do not currently pose an unreasonable risk of danger to public safety. The time period between sentencing and finality of the judgment can span years. Prisoners can substantially increase in dangerousness during this interval. An increase in dangerousness will not always be reflected in new criminal convictions. Also, prisoners could have been dangerous when the life sentences were imposed and remained unreasonable safety risks." (*Id*. at p. 176.)

*Yearwood*'s concerns about retroactively applying section 667, subdivision (c)(2)(C) may be valid but they are not reflected in the ballot arguments in favor or the Act and no authority has been cited that unexpressed concerns, even if valid, clearly indicates voter intent. Additionally, these same apprehensions apply to a qualifying defendant sentenced after the Act's effective date, but as *Yearwood* notes, the trial court has no discretion to impose a third strike sentence even if it believes a defendant is or will be dangerous in the future, based on defendant's conduct in custody or elsewhere.

Given the *Estrada* presumption, the absence of any expressed intent or its clear "equivalent" that the Act apply prospectively only, and the stated intent underlying

the Act, we conclude sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C) apply retroactively to judgments not yet final on the Act's effective date.

DISPOSITION

The cause is remanded and the trial court is directed to hold a resentencing hearing within 30 days after this opinion becomes final, to impose a sentence in accordance with sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C), and to forward an amended abstract of judgment reflecting the modified sentence to the parties and the Department of Corrections and Rehabilitation within 30 days after resentencing. In all other respects, the judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

ARONSON, J.

22