Filed 8/3/22  P. v. Velasquez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANGEL VELASQUEZ,<br><br>Defendant and Appellant. | F080270<br><br>(Super. Ct. No. 19CMS1941)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Randy L. Edwards, Judge.

Karriem Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Defendant Angel Velasquez was charged by information with inflicting corporal injury on a spouse (Pen. Code, § 273.5, subd. (a); count 1); attempting to dissuade the

complaining witness (§ 136.1, subd. (b)(1); count 2); misdemeanor vandalism (§ 594, subd. (a); count 3); and interfering with the use of a wireless communication device to prevent law enforcement from being notified of a crime (§ 591.5; count 4). (Undesignated statutory references are to the Penal Code.) As to count 1, it was alleged defendant had two domestic violence convictions within the purview of section 273.5, subdivision (f)(1): a section 243, subdivision (e)(1) conviction in Kings County and a section 243, subdivision (e)(1) conviction in Yolo County. Defendant admitted he suffered the prior convictions after trial commenced, and the jury convicted him of all the charges. The court sentenced defendant to the middle term of four years on count 1, the upper term of three years on count 2 to be served concurrently with the sentence on count 1, 187 days on count 3 to be served concurrently, and 180 days on count 4, stayed under section 654.

On appeal, defendant asserts his conviction for attempting to dissuade a witness must be reversed because it violates the rule stated in *In re Williamson* (1954) 43 Cal.2d 651 (*Williamson*) that, when a general statute prohibits the same conduct as a more specific statute, a defendant cannot be prosecuted under the general statute. He also contends his enhanced sentence on count 1 under section 273.5, subdivision (f)(1) must be reversed because it is not supported by sufficient evidence. In support, he argues his prior section 243, subdivision (e)(1) convictions are not listed as qualifying domestic violence convictions under section 273.5, subdivision (f)(1) and, thus, could not support an enhancement pursuant to that section. Alternatively, defendant contends his admissions to the alleged prior convictions were invalid because the court did not advise him of his rights under *Boykin v. Alabama* (1969) 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122 (*Boykin-Tahl*) before accepting his admissions. Finally, the parties agree the court erred in computing defendant's presentence conduct and custody credit at the time of sentencing.

2.

We affirm defendant's domestic violence conviction in violation of section 273.5, subdivision (a) (count 1) but reverse the true findings regarding the related prior convictions allegation and vacate defendant's enhanced sentence under section 273.5, subdivision (f)(1) as to that count. We also reverse defendant's conviction for dissuading a witness (§ 136.1, subd. (b)(1); count 2). We remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and D.V. had been married for two years at the time of trial and they had a child together. On April 20, 2019, D.V. was at her mother-in-law Ruth's house when defendant walked in the door; he appeared to be high. Ruth had a restraining order against defendant that restricted him from coming to her house. D.V. had a fight with defendant and called the police. Around 3:00 a.m., Officer Jonathan Farr contacted D.V., who appeared distraught; defendant had left. D.V. provided a statement in which she said defendant pushed her. She showed Officer Farr an abrasion on her finger and told him she was missing her glasses. D.V.'s statement was captured on Officer Farr's body camera; the recording was played for the jury.

After Officer Farr left, defendant returned through a window and asked D.V. why she called the police. He then took away Ruth's cordless house phone and D.V.'s cellular phone after D.V. told him she was going to call the police. Defendant told Ruth and D.V. not to call the police, and he left with both of the phones.[1]

When Officer Farr returned an hour later, D.V. again sounded distraught, and Officer Farr immediately noticed abrasions on D.V.'s left arm as he approached. D.V. had the frame to her glasses but the lenses had fallen on the ground somewhere. D.V. and Ruth reported defendant took D.V's cellular phone and Ruth's house telephone. That

---

[1]Ruth clarified on cross-examination defendant said, "Don't call the police just to keep me here," because D.V. wanted him to be there with her.

3.

encounter was also captured on Officer Farr's body camera, and the recording was played for the jury.

At trial, D.V. stated she did not remember that night because she had been drinking. She denied defendant did anything physical to her. She just recalled waking up the next day and her glasses were broken.

### Prior incidents

On October 23, 2017, Officer Patrick Jurdon encountered D.V. after being dispatched on a call; D.V. looked "[v]isibly shaken." D.V. reported she and defendant argued and he slapped her on the back of the head, causing slight swelling.

On January 2, 2019, Officer Alan Lara was dispatched to a motel where he met with D.V. outside of her room. D.V. seemed scared and her eyes looked watery, like she had been crying. She had a "pretty big golf ball-size knot on her [fore]head." She said her husband, defendant, had caused the injury. He hit her with closed fists approximately two times. She ran into the bathroom with her phone and locked the door; defendant told her not to call the police. But D.V. called the police, and defendant left. An emergency protective order was issued following the incident.

### Defense Case

Defendant testified on his own behalf. He admitted going with D.V. to Ruth's house the morning of the charged incident. He testified he left and then came back through the window because the door was locked. He denied ever hitting D.V. He conceded he took D.V.'s phone and the cordless house phone and stated he accidentally left with them.

### Verdict and Sentence

A jury convicted defendant of inflicting a corporal injury on a spouse (§ 273.5, subd. (a); count 1); attempting to dissuade the complaining witness (§ 136.1, subd. (b)(1); count 2); misdemeanor vandalism (§ 594, subd. (a); count 3); and interfering with the use of a wireless communication device to prevent law enforcement from being notified of a

crime (§ 591.5; count 4). As to count 1, it was alleged defendant had two domestic violence convictions within the purview of section 273.5, subdivision (f)(1): a section 243, subdivision (e)(1) conviction in Kings County and a section 243, subdivision (e)(1) conviction in Yolo County. Defendant admitted he suffered the two section 243, subdivision (e)(1) convictions after trial commenced.

The court sentenced defendant to the middle term of four years on count 1 based on the triad provided for in section 273.5, subdivision (f)(1), the upper term of three years on count 2 to be served concurrently with the sentence on count 1, 187 days on count 3 to be served concurrently, and 180 days on count 4, stayed under section 654. Defendant was awarded 195 days of actual custody credit and 194 days of conduct credit under section 4019, for a total of 389 days.

## DISCUSSION

## I. Defendant's Conviction of Count 2 Must Be Reversed

First, defendant challenges his conviction for dissuading a witness (count 2), asserting prosecution of that count should have been barred under the *Williamson* rule.

### A. Standard of Review and Applicable Law

#### 1. The Williamson Rule

In *Williamson*, *supra*, 43 Cal.2d 651, the California Supreme Court stated the general rule that, if a general statute includes the same conduct as a special statute, the court infers the Legislature intended that conduct to be prosecuted exclusively under the special statute. (*Id*. at p. 654.) This doctrine is often referred to as the *Williamson* rule. (*People v. Murphy* (2011) 52 Cal.4th 81, 86.)

"Absent some indication of legislative intent to the contrary, the *Williamson* rule applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the

general statute.'" (*People v. Murphy*, *supra*, 52 Cal.4th at p. 86.) "In its clearest application, the rule is triggered when a violation of a provision of the special statute would inevitably constitute a violation of the general statute." (*Ibid*.) "[I]f the more general statute contains an element that is not contained in the special statute and that element would not commonly occur in the context of a violation of the special statute, we do not assume that the Legislature intended to preclude prosecution under the general statute." (*Id*. at p. 87.) Rather, "because the general statute contemplates more culpable conduct, it is reasonable to infer that the Legislature intended to punish such conduct more severely." (*Ibid*.)

But "'courts must consider the *context* in which the statutes are placed. If it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute.'" (*People v. Murphy*, *supra*, 52 Cal.4th at p. 87; accord, *People v. Jenkins* (1980) 28 Cal.3d 494, 502.)

In *Murphy*, the defendant crashed her car into a hillside and later falsely reported the car had been stolen. (*People v. Murphy*, *supra*, 52 Cal.4th at p. 85.) She was convicted, in part, of procuring or offering a false or forged instrument for filing or recording in violation of section 115, subdivision (a), a felony. (*Ibid*.) On appeal, the defendant argued her prosecution under section 115 was precluded by the more specific statute applicable to her conduct, Vehicle Code section 10501, subdivision (a), which makes it "unlawful for any person to make or file a false or fraudulent report of theft of a vehicle required to be registered under this code with any law enforcement agency with intent to deceive" and which is a misdemeanor for a first offense. (See *Murphy*, at pp. 85, 88.)

Applying the *Williamson* rule, the *Murphy* court concluded the defendant's conviction for a violation of section 115, subdivision (a) had to be reversed. (*Murphy*,

6.

*supra*, 52 Cal.4th at p. 95.)  The court held the defendant's conduct plainly came within the terms of Vehicle Code section 10501; Penal Code section 115 was more general than Vehicle Code section 10501 because it applied to a broader range of documents; and "[e]ach element of [Vehicle Code] section 10501 has a counterpart in [Penal Code] section 115." (*Murphy*, at pp. 88.)  The court rejected the People's argument the plain language of Vehicle Code section 10501 did not require that a report be made in writing and making a false oral report would not violate Penal Code section 115, so a violation of the former would not commonly result in a violation of the latter.  (*Murphy*, at p. 89.) The *Murphy* court held:  "Our cases have applied the *Williamson* rule without giving any consideration to the circumstance that a different clause of the special statute at issue could have been violated without violating the general statute." (*Ibid*.)  Finally, the court determined, "the filing of a false vehicle theft report in violation of Vehicle Code section 10501 would commonly result in a violation of Penal Code section 115." (*Id*. at p. 94.) Accordingly, the court inferred "that the Legislature, in specifying that such conduct constitutes a misdemeanor, intended to create an exception to the felony punishment specified in the more general statute." (*Id*. at pp. 94–95.)

### 2. *The alleged more general statute—section 136.1, subdivision (b)*

Section 136.1 details offenses involving the intimidation of witnesses and victims, the related penalties, enhancements, and circumstances in aggravation.  Section 136.1, subdivision (b)(1), under which defendant was prosecuted, provides:

> "(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

> "(1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge."

7.

The related jury instruction for a charged violation of section 136.1, subdivision (b) is set forth in CALCRIM No. 2622. CALCRIM No. 2622 defines the term "witness" as used in the description of the offense, in part, as "someone [or a person the defendant reasonably believed to be someone]" "[Who knows about the existence or nonexistence of facts relating to a crime]."

### 3. The alleged more specific statute—section 591.5

Section 591.5 makes it a misdemeanor to interfere with the use of a wireless communication device for a certain purpose. It provides:

> "A person who unlawfully and maliciously removes, injures, destroys, damages, or obstructs the use of any wireless communication device with the intent to prevent the use of the device to summon assistance or notify law enforcement or any public safety agency of a crime is guilty of a misdemeanor."

### B. Analysis

Defendant asserts, pursuant to the *Williamson* rule, his prosecution for dissuading a witness under section 136.1, subdivision (b)(1) (count 2), which he alleges is a more general statute, was precluded under section 591.5, which he alleges is the more specific, applicable statute prohibiting interference with the use of a wireless communication device to prevent it from being used to notify law enforcement of a crime. He asserts a violation of the latter "will commonly—if not always—result in a violation of the general attempting to dissuade a witness statute." The People disagree prosecution of this count violated the *Williamson* rule. They assert a violation of section 591.5 is not always or commonly also a violation of section 136.1. Rather, they argue, "Section 136.1 is limited to the situation where a person attempts to prevent another person who was been either a 'victim' or a 'witness' to a crime from reporting that 'victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.'" But, "[t]he same limitations do not apply in the context of section 591.5" in that the reporting party does not have to be a victim or a

8.

witness to the victimization. Additionally, they assert, under section 591.5, "the reporting of the incident is not limited to just a member of law enforcement or [the] judicial system." Rather, it applies where someone interferes with the use of a device to prevent its use to either "'summon assistance *or* notify law enforcement *or* any public safety agency,'" which includes reports to a third party such as a spouse, parent, or friend, or to child protective services or an agency that handles elder abuse. Relying on *Murphy* on reply, defendant contends the relevant inquiry is whether the defendant's conduct that amounted to a violation of the specific statute would commonly trigger liability under the general statute. He asserts "[a] defendant who engages in conduct like [he did]—removing a wireless phone to preclude that device from being used to notify law enforcement of a crime—will commonly violate section 136.1, subdivision (b)(1), and 591.5." We agree with defendant; the second test for application of the *Williamson* rule precludes liability under section 136.1, subdivision (b) in this case.[2]

When a specific statute may be violated in multiple ways, the *Williamson* analysis focuses solely on that part of the statute that is applicable to the defendant's conduct at issue. (See *People v. Murphy*, *supra*, 52 Cal.4th at pp. 89–91 ["Whether the Legislature has addressed the specific conduct in a separate statute rather than in a clause or subdivision of a statute that includes other conduct is not determinative in our effort to discern the Legislature's intent"]; *People v. Joseph* (2019) 33 Cal.App.5th 943, 956 ["when a special statute may be violated in two ways, the analysis focuses solely on the way in which the defendant violated the statute"]; see *People v. Henry*, *supra*, 28

---

[2]Notably, defendant asserts he did not forfeit this issue though no objection was raised below because it involves a pure question of law on undisputed facts and because the violation of the *Williamson* rule resulted in an unauthorized sentence, citing *People v. Henry* (2018) 28 Cal.App.5th 786, 791, footnote 3. Alternatively, defendant argues, if the issue was forfeited because of his counsel's failure to object, his counsel was ineffective on that basis. The People do not argue forfeiture. Given that the issue is one of law based on undisputed facts, we believe it is appropriate to address the merits of defendant's arguments. (See *ibid*.) Accordingly, we do not address defendant's ineffective assistance of counsel claim further.

9.

Cal.App.5th at p. 793 ["when a special statute can be violated in two different ways, one of which does not violate the general statute, the reviewing court should consider only if the present conduct at issue would commonly violate the general statute"].) We must determine whether a violation of that applicable part of the specific statute at issue would """"necessarily *or commonly* result in a violation of the general statute.""" (*Joseph*, at p. 956, italics added.)

Thus, while it is true, as the People argue, that section 591.5 can be violated if a defendant obstructs another person from "summoning assistance" from a third party such as a spouse, a parent, or a friend or from any public safety agency, we focus on the way in which defendant violated the allegedly more specific statute—he took D.V.'s cellular phone and Ruth's cordless house phone to prevent them from calling the police. Such conduct would "'necessarily or commonly result in a violation of the general statute,'" e.g., section 136.1, subdivision (b). (*People v. Murphy*, *supra*, 52 Cal.4th at p. 86; see *People v. Joseph*, *supra*, 33 Cal.App.5th at p. 956.) That is, taking someone's phone to prevent him or her from calling the police would necessarily, or, at the very least, commonly result in a violation of section 136.1, subdivision (b) in that it amounts to a person "prevent[ing] … another person who has been the victim of a crime or who is witness to a crime from … [¶] … [¶] [m]aking any report of that victimization to any peace officer or state or local law enforcement officer …." (§ 136.1, subd. (b)(1).)

We conclude, in adopting a specific statute to address such conduct, the Legislature intended that such conduct should be punished under the special statute and not under a more general statute which, although broad enough to include such conduct, was adopted without particular consideration of such conduct. (See *People v. Murphy*, *supra*, 52 Cal.4th at p. 91.) Thus, "we infer that the Legislature intended that such conduct should be punished under the special statute and not under a more general statute which, although broad enough to include such conduct, was adopted without particular consideration of such conduct." (*Ibid.*)

Accordingly, here, the *Williamson* rule precluded defendant's prosecution under section 136.1, subdivision (b). Thus, his conviction of count 2 must be reversed.

In so holding, we reject the People's contention the statutes are distinct because section 591.5 does not require the reporting party to be a "victim" or "witness" of a crime like section 136.1, subdivision (b). Notably, to be classified as a witness under section 136.1—and thus, a qualified reporting party—an individual must simply "know[] about the existence or nonexistence of facts relating to a crime." (CALCRIM No. 2622.) Yet, any person looking "to summon assistance or notify law enforcement or any public safety agency of a crime" as required by section 591.5 would necessarily be considered a "witness" as that term is defined relative to section 136.1. Put differently, a person must know about "the existence or nonexistence of facts relating to a crime" to summon assistance or notify law enforcement or a public safety agency of a crime.

Regardless, even if the elements of section 136.1, subdivision (b) could be viewed as containing an element not included in section 591.5, as discussed, the second test for application of the *Williamson* rule is implicated. (See *People v. Murphy*, *supra*, 52 Cal.4th at p. 87 [noting *Williamson* rule is not inapplicable simply because general statute contains an element not included in the special statute].) That is, conduct such as defendant's conduct in this case, which violates section 591.5, would commonly or necessarily result in a violation of section 136.1, subdivision (b).

Accordingly, we reverse defendant's conviction for count 2. Notably, defendant was also charged and convicted under the more specific statute of interfering with the use of a wireless communication device to prevent law enforcement from being notified of a crime (§ 591.5; count 4). That conviction remains unaffected.

## II.  Advisement of *Boykin-Tahl* rights

Defendant also argues his admissions to the two prior conviction allegations attached to count 1 were uninformed and involuntary because the trial court failed to

advise him of his constitutional rights and the potential penal consequences related to his admissions. We agree the court's failure to provide the necessary advisements renders defendant's admissions to the prior conviction allegations invalid and the enhanced sentence based upon those allegations must be reversed.

## A.    Relevant Procedural Background

Before the defense presented evidence at trial, defense counsel advised the court defendant was "going to admit … the two convictions that, one, concurred [*sic*] on September 6, 2014, in Yolo County, and the other one there was a conviction in October of 2018 in Kings County." The court confirmed with defendant and accepted his admissions:

> "THE COURT:  [I]t's alleged in the Third Amended Information here that you suffered prior convictions. The first one is that you suffered a conviction on October 17, 2018, for a violation of … Section 243(e)(1), and that was in Kings County, case number 17CM6873. [¶] Sir, do you admit that you suffered that previous conviction?

> "THE DEFENDANT:  Yes, sir.

> "THE COURT:  All right. [¶] And you also suffered a conviction on, it's alleged that you suffered a conviction on September 6th, 2014, for a violation of … Section 243(e)(1), that was in Yolo County, for CRF140000460. [¶] Sir do you admit that you suffered that conviction?

> "THE DEFENDANT:  Yes, sir.

> "THE COURT:  All right. [¶] [Defense counsel], do you concur in your client's waiver of his constitutional and statutory rights that you've advised him about and his admission of his convictions in those prior cases?

> "[DEFENSE COUNSEL]:  Yes, your Honor.

> "THE COURT:  All right. Very well, the Court will find that the defendant has been convicted of those two previous convictions on those dates."

12.

## B. Standard of Review and Applicable Law

The United States Supreme Court held in *Boykin v. Alabama*, *supra*, 395 U.S. 238, that it would not presume from a silent record that in pleading guilty a defendant in a state criminal trial had validly waived his or her rights to a jury trial, against compulsory incrimination, and to confront his or her accusers. (*Id.* at pp. 242–243; see *People v. Adams* (1993) 6 Cal.4th 570, 575.) In *In re Tahl*, *supra*, 1 Cal.3d 122, the California Supreme Court further concluded that, in every case in which a guilty plea is entered, "the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant." (*Id.* at p. 132; see *People v. Adams*, *supra*, at pp. 575–576.) "At a minimum *Boykin* required 'a specific and express enumeration and waiver by the accused of the three constitutional rights surrendered by a guilty plea ….' [Citation.]" (*Adams*, at p. 576.) Accordingly, "[u]nder the *Boykin-Tahl* rule, a guilty plea is not valid unless the record reflects (1) the defendant had been advised of and waived his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination [citation], or (2) the plea is voluntary and intelligent under the totality of the circumstances." (*People v. Gaul-Alexander* (1995) 32 Cal.App.4th 735, 746.)

Relevant here, in *In re Yurko* (1974) 10 Cal.3d 857, the California Supreme Court held "*Boykin* and *Tahl* require, before a court accepts an accused's admission that he has suffered prior felony convictions, express and specific admonitions as to the constitutional rights waived by an admission. The accused must be told that an admission of the truth of an allegation of prior convictions waives, as to the finding that he has indeed suffered such convictions, the same constitutional rights waived as to a finding of guilt in case of a guilty plea." (*Id.* at p. 863.)

13.

In *People v. Cross* (2015) 61 Cal.4th 164, the California Supreme Court reversed a section 273.5, subdivision (f) enhancement based on the trial court's failure to sufficiently advise the defendant of his constitutional rights before accepting his admission to the prior conviction allegation. (*Cross*, at p. 174.) In *Cross*, the defendant stipulated he had previously been "'convicted of a felony violation of … Section 273.5,'" thereby admitting "'every fact necessary to imposition of the additional punishment [under section 273.5, subdivision (f)(1)] other than conviction of the underlying offense.'" (*Cross*, at p. 174.) Accordingly, the *Cross* court held the defendant "was entitled to receive *Boykin-Tahl* warnings before he made this admission" to the prior conviction allegation. (*Ibid.*)

The *Cross* court noted, "The failure to properly advise a defendant of his or her trial rights is not reversible 'if the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.'" (*People v. Cross*, *supra*, 61 Cal.4th at p. 179; accord, *People v. Howard* (1992) 1 Cal.4th 1132, 1175, 1179, abrogated on other grounds in *People v. Rhoades* (2019) 8 Cal.5th 393, 425, fn. 12.) But, in *Cross*, the record contained no indication the defendant's stipulation was knowing and voluntary; rather, counsel read the stipulation in open court, and the trial court immediately accepted it. (*Cross*, at p. 180.) Because "nothing in the record affirmatively show[ed]" the defendant was aware of his right to a fair determination of the truth of the prior conviction allegation, the defendant's stipulation to the prior conviction allegation was set aside. (*Ibid*.)

## C. Analysis

Defendant contends his admissions to the prior convictions allegation were not voluntary and intelligent because the trial court failed to advise him of his *Boykin-Tahl* rights before accepting his admissions. He asserts, as a result, the prior domestic violence conviction enhancement imposed pursuant to section 273.5, subdivision (f)(1)

should be reversed.[3]  The People concede the court did not expressly advise defendant of his right to a jury trial, his privilege against self-incrimination, or his right to confront his accusers before defendant admitted the two domestic violence prior convictions.  They respond, nevertheless, the totality of the circumstances established defendant knowingly and intelligently waived his constitutional rights when he admitted the prior convictions allegations given that he had prior experience with the criminal justice system, and he represented he discussed the waiver with his counsel.  Accordingly, they argue reversal of the enhancement is not required.  Alternatively, they contend they should be entitled to retry the prior convictions allegations if admissions thereto are deemed invalid.  We agree with defendant the court's failure to advise him of his constitutional rights before accepting his admissions to the prior conviction allegations renders the admissions invalid, and the related enhancement allegation must also be reversed on this basis.

Here, it is undisputed the trial court failed to give defendant the required *Boykin/Tahl* advisements regarding his constitutional rights, or to get a waiver of those rights pursuant to the requirements of *In re Yurko* before accepting defendant's admission to the prior convictions allegations.  And, contrary to the People's contention, there is nothing in the record to demonstrate defendant otherwise made a knowing and intelligent waiver of his rights.  In so holding, we conclude it is immaterial that the court asked counsel whether counsel concurred with defendant's "waiver of his constitutional and statutory rights that you've advised him about and his admission of his convictions in those prior cases."  The court's statement to counsel assumes on a silent record that the requisite advisements were provided to defendant through his counsel.  However, nothing

---

[3]Defendant also argues, if the issue was forfeited because of his counsel's failure to object, defendant argues his counsel was ineffective on that basis.  Notably, in *Cross*, the California Supreme Court rejected a claim of forfeiture based upon the defendant's failure to object to the lack of advisement and waiver at trial.  (*People v. Cross*, *supra*, 61 Cal.4th at pp. 171, 173.)  The People do not argue forfeiture and we address defendant's claim on the merits.  Thus, we do not address his ineffective assistance of counsel claim further.

in the record affirmatively establishes defendant was advised of his rights as required by *Boykin/Tahl* and *In re Yurko* such that he knowingly and intelligently waived them. Thus, we cannot conclude the totality of the circumstances here establish defendant validly waived his constitutional rights.

Accordingly, the true findings regarding the prior conviction allegations and defendant's enhanced sentence on count 1 imposed pursuant to section 273.5, subdivision (f)(1) that was based on the prior convictions allegations must be reversed.[4] Notably, this does not affect the validity of defendant's underlying conviction on count 1 for violating section 273.5, subdivision (a), which defendant does not challenge. As for the appropriate remedy, we agree with the People; they are entitled to prove the prior convictions allegations on remand because remand for retrial is not barred by double jeopardy. (See *Monge v. California* (1998) 524 U.S. 721, 734 [holding in the noncapital

---

[4]In a separate issue, defendant also challenges his enhanced sentence on count 1 imposed pursuant to section 273.5, subdivision (f)(1) on the grounds his alleged prior offenses did not qualify him for liability under that section. The People concede there was no evidence defendant was convicted of a prior offense under subdivision (a), or subdivision (d) of section 243, or section 243.4, 244, 244.5, or 245, as necessary to qualify him for sentencing under section 273.5, subdivision (f)(1). But, they assert, on remand, defendant should be sentenced pursuant to section 273.5, subdivision (f)(2) based on the nature of his prior convictions.

Because, as discussed in this part, we are reversing the true findings regarding the prior convictions allegation as well as the related enhancement imposed pursuant to section 273.5, subdivision (f)(1) on other grounds, we need not address the People's contention. On remand, if the People retry the prior conviction allegations and the allegations are found true, the People may then raise their argument regarding the appropriate sentence in the trial court.

We note courts are not categorically prohibited from imposing an uncharged enhancement where the facts supporting the enhancement have been alleged and found true. (See *People v. Tirado* (2022) 12 Cal.5th 688, 699 [concluding "courts are not categorically prohibited from imposing uncharged enhancements and … the power to do so is not conditioned on the charged and adjudicated enhancement being legally or factually inapplicable"]; *People v. Strickland* (1974) 11 Cal.3d 946, 961 [holding an uncharged enhancement may be imposed when a charged and adjudicated enhancement is inapplicable to the offense for which the defendant is ultimately convicted].) Additionally, unless the Legislature requires otherwise, the "accusatory pleading need not specify by number the statute under which the accused is being charged." (*People v. Thomas* (1987) 43 Cal.3d 818, 826.) But we express no opinion regarding how the trial court should sentence defendant on remand.

sentencing context, retrial of a prior conviction allegation does not violate the double jeopardy clause of the federal Constitution]; *People v. Barragan* (2004) 32 Cal.4th 236, 241 [same].)

### III.    Other Matters To Be Raised Upon Remand

Defendant also asserts the court credited him with a total of 389 presentence custody credits, consisting of 195 actual days, and 194 days of conduct credit.  He asserts the trial court miscalculated his presentence credits and that he was entitled to 196 actual days of credit and 196 days of conduct credit totaling 392 days.  He states he was in custody from April 25, 2019, to, and including, November 6, 2019, by the time of sentencing on November 6, 2019.  The People agree with defendant's contention.

Because we are vacating defendant's sentence on other grounds as discussed *ante*, a new abstract of judgment will necessarily result.  Accordingly, the parties are directed to raise the issue regarding the correct calculation of presentence credit on remand.[5]

---

[5]We further note, during the pendency of this appeal, the Legislature enacted Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567), which limits a court's ability to impose an upper term and Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill 518), which permits the court additional discretion in staying a sentence under section 654.  At the time of defendant's sentencing, section 1170 provided that the choice between sentencing a defendant to the lower, middle, or upper term "shall rest within the sound discretion of the court," with the court to determine which term "best serves the interests of justice."  In doing so, the court could rely on "the record in the case, the probation officer's report, other reports, … and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing."  (Former § 1170, subd. (b).)

Effective January 1, 2022, Senate Bill 567 amended section 1170 to permit the imposition of a sentence exceeding the middle term only "when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)  But the court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (§ 1170, subd. (b)(3).)

Additionally, when the trial court sentenced defendant, section 654 required that an act or omission that was punishable under two or more provisions of law "be punished under the provision that provid[ed] for the longest potential term of imprisonment."  (Former § 654, subd.

17.

# DISPOSITION

Defendant's conviction on count 2 and the true finding related to the section 273.5, subdivision (f)(1) enhancement alleged as to count 1 are reversed. The remaining convictions are otherwise affirmed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

PEÑA, J.

WE CONCUR:

HILL, P. J.

LEVY, J.

---

(a).) Assembly Bill 518 modified section 654, subdivision (a), effective January 1, 2022, to permit an act or omission punishable under two or more provisions of law "be punished under either of such provisions." (Stats. 2021, ch. 441, § 1.)

Because we are vacating defendant's sentence on the stated grounds, we do not discuss the application of these provisions to defendant's sentence in this case further. However, at resentencing, the court should consider these amendments to the law when sentencing defendant.

18.