Filed 7/7/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S180181 |
| v. | ) | |
| | ) | Ct.App. 4 E046742 |
| MELISSA KAY MURPHY, | ) | |
| | ) | San Bernardino County |
| Defendant and Appellant. | ) | Super. Ct. No. FSB060016 |
| _____ | ) | |

Defendant, Melissa Kay Murphy, submitted a false report to a deputy sheriff, stating that her vehicle had been stolen. We granted review to decide whether defendant's felony conviction under a general statute governing the offering of a false instrument for filing in a public office (Pen. Code, § 115, subd. (a)) is precluded by special statutes in the Vehicle Code that make it a misdemeanor to make or file a false report of vehicle theft (Veh. Code, § 10501, subd. (a)) or to file a false statement with the Department of Motor Vehicles (Veh. Code, § 20). We conclude the Legislature intended that defendant's conduct be prosecuted as a misdemeanor under Vehicle Code section 10501 and not under the more general statute.

## I. Facts and Procedure

As relevant to the issues presented here, the facts are as follows: A San Bernardino County sheriff's deputy discovered defendant's Chevrolet Malibu crashed into a hillside. Based on the license plate number, the officer obtained the owner's name and address and went to defendant's home to inquire about the vehicle. Defendant told the officer that the car had been stolen, and the officer

completed a stolen vehicle report on California Highway Patrol (CHP) form No. 180.  Defendant signed the completed form under penalty of perjury.  The information on a form No. 180 is routinely entered into a national stolen vehicle database.  Two days after the accident, defendant filed a claim with her insurance company, stating under penalty of perjury that her vehicle had been stolen.

Defendant was charged with three felonies:  procuring or offering a false or forged instrument for filing or recording (Pen. Code, § 115, subd. (a)), knowingly presenting a false or fraudulent insurance claim (*id*., § 550, subd. (a)(4)), and knowingly presenting a false statement in an insurance claim (*id*., § 550, subd. (b)(1)).  Evidence presented at trial established that the car had not been stolen and that defendant had been driving the car herself when the accident occurred.  A jury convicted defendant on all three counts, and the trial court sentenced her to three years' formal probation, conditioned upon her service of a 180-day jail term.  On appeal, defendant challenged her conviction on the first count, asserting that prosecution under Penal Code section 115 was precluded by either of two more specific statutes applicable to her conduct, Vehicle Code sections 20 or 10501, each of which establishes a misdemeanor offense.  The Court of Appeal affirmed the judgment of the trial court, and we granted defendant's petition for review.

## II.  Discussion

The Legislature has adopted a statute, Vehicle Code section 10501, that specifically and narrowly addresses defendant's conduct of filing a false vehicle theft report, and makes that conduct a misdemeanor.  Defendant contends that by enacting that statute, the Legislature intended to preclude prosecution for this conduct under a more general statute that imposes a more severe penalty.

2

A.  *The* Williamson *Rule*

Defendant's challenge is premised on a doctrine often referred to as the *Williamson* rule, based on our decision in *In re Williamson* (1954) 43 Cal.2d 651, 654 (*Williamson*).  Under the *Williamson* rule, if a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute.  In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be prosecuted under either statute.  (*Ibid*.)  "The rule is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict."  (*People v. Walker* (2002) 29 Cal.4th 577, 586.)  "The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent.  The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply.  Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and 'requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision . . . . '  (*People v. Gilbert* [(1969)] 1 Cal.3d [475,] 481.)"  (*People v. Jenkins* (1980) 28 Cal.3d 494, 505-506 (*Jenkins*), fn. omitted.)

Absent some indication of legislative intent to the contrary, the *Williamson* rule applies when (1) "each element of the general statute corresponds to an element on the face of the special statute" or (2) when "it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute."  (*People v. Watson* (1981) 30 Cal.3d 290, 295-296 (*Watson*).)  In its clearest application, the rule is triggered when a violation of a provision of the special statute would inevitably constitute a

3

violation of the general statute.  In *Williamson*, for example, the defendant was convicted under the general conspiracy statute, Penal Code section 182, of conspiring to commit the crime of contracting without a license in violation of section 7028 of the Business and Professions Code.  A violation of Penal Code section 182 was punishable as either a misdemeanor or a felony.  The defendant argued that his conduct was punishable only under a special statute, Business and Professions Code former section 7030 (added by Stats. 1939, ch. 37, p. 384; repealed by Stats. 1963, ch. 1883, § 2, p. 3867), which made it a misdemeanor to "conspire[] with another person to violate any of the provisions of this chapter." This court agreed.  We explained, "To conclude that the punishment for the violation of section 7030 of the Business and Professions Code is stated in section 182 of the Penal Code, which deals with conspiracies in general, would be inconsistent with the designation of the particular conspiracy as a misdemeanor." (*Williamson*, *supra*, 43 Cal.2d at p. 655; see also *People v. Gilbert*, *supra*, 1 Cal.3d at p. 481 [prosecution for theft barred by special statute prohibiting use of false statement to obtain welfare, because "any conduct which violated [the welfare fraud statute] would also constitute a violation of the theft provision of the Penal Code"].)

On the other hand, if the more general statute contains an element that is not contained in the special statute and that element would not commonly occur in the context of a violation of the special statute, we do not assume that the Legislature intended to preclude prosecution under the general statute.  In such situations, because the general statute contemplates more culpable conduct, it is reasonable to infer that the Legislature intended to punish such conduct more severely.  For example, in *Watson, supra*, 30 Cal.3d 290, the defendant was charged with second degree implied malice murder based on a fatal automobile collision that occurred when the defendant was intoxicated and had been driving at

4

excessive speeds. On appeal, the defendant argued that he could be convicted only of vehicular manslaughter under Penal Code section 192 because that statute specifically addressed killing while driving a vehicle, whereas the murder statute was a more general statute that addressed a broad range of unlawful killings. We rejected that argument because a murder conviction requires a finding of malice, while vehicular manslaughter requires only gross negligence. Because of the different mental state required, "a violation of the vehicular manslaughter statute would not necessarily or commonly result in a violation of the general murder statute. Thus, the *Williamson* rule is inapplicable." (*Watson, supra*, at p. 296.)

However, that the general statute contains an element not within the special statute does not necessarily mean that the *Williamson* rule does not apply. "It is not correct to assume that the [*Williamson*] rule is inapplicable whenever the general statute contains an element not found within the four corners of the 'special' law. Rather, the courts must consider the *context* in which the statutes are placed. If it appears from the entire context that a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute." (*Jenkins*, *supra*, 28 Cal.3d at p. 502.)

For example, in *People v. Ruster* (1976) 16 Cal.3d 690 (*Ruster*), this court compared the general statute prohibiting forgery with the special misdemeanor statute prohibiting unemployment insurance fraud. In *Ruster,* the defendant filed claims for unemployment benefits using a false name and Social Security number. He was prosecuted under the general forgery statute, Penal Code section 470. The defendant argued that his actions could be prosecuted only under section 2101 of the Unemployment Insurance Code, which made it a misdemeanor to "willfully make a false statement [or] representation or knowingly fail to disclose a material

fact . . . to obtain . . . any benefit or payment" for unemployment insurance. (Unemp. Ins. Code, former § 2101, subd. (a).) The People argued that because one element of forgery — the signing of the name of another — is not an element of Unemployment Insurance Code section 2101, that statute "does not supplant" Penal Code section 470 when unemployment fraud involves forgery. (*Ruster*, *supra*, at p. 695.) We rejected the People's argument and applied the *Williamson* rule to preclude the forgery prosecution. We stated that "the Legislature unquestionably contemplated that the special statute might be violated by means of forgery. Indeed, applying for aid under a false identity, which entails signing eligibility questionnaires and pay certification cards with a false name, is apparently one of the most common forms of unemployment insurance fraud." (*Ruster, supra,* at p. 699.)

   B. *Application of the* Williamson *Rule to the Facts of the Present Case*

   Applying these principles, defendant contends that her conviction under Penal Code section 115 was precluded by Vehicle Code section 10501, which makes it "unlawful for any person to make or file a false or fraudulent report of theft of a vehicle required to be registered under this code with any law enforcement agency with intent to deceive." (Veh. Code, § 10501, subd. (a).) This offense is a misdemeanor unless the person has been previously convicted of the same offense, in which case it is punishable as either a misdemeanor or a felony. (Veh. Code, §§ 10501, subd. (b), 40000.9.) Defendant's conduct plainly comes within the terms of Vehicle Code section 10501. By comparison, the statute under which she was convicted, Penal Code section 115, provides: "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which

6

instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."  (Pen. Code, § 115, subd. (a).)

Penal Code section 115 is more general than Vehicle Code section 10501 because it applies to a broader range of documents that may be filed in any public office.  Each element of section 10501 has a counterpart in section 115.  A vehicle theft report that has been filed necessarily was "offer[ed]" for filing.  A report that has been filed with a law enforcement agency necessarily has been filed with a "public office."  If the report has been filed, it is necessarily a document that "if genuine, might be filed, registered, or recorded."  And if it has been filed with intent to deceive, it has been filed "knowingly."  The main issue in dispute in the present case is whether a violation of section 10501 would necessarily or commonly include the filing of an "instrument."

> 1.  *Application of the* Williamson *Rule When a Special Statute Can be Violated in Two Different Ways, One of Which Does Not Violate the General Statute*

The People argue that a violation of Vehicle Code section 10501 would not commonly result in a violation of Penal Code section 115 because the making of a false *oral* report is just as common a means of violating section 10501 as the filing of a *written* report — and the former would never violate section 115.  A violation of section 115 requires the offering of an "instrument."  An instrument is, at a minimum, a type of document.  Vehicle Code section 10501, on the other hand, applies to any false stolen vehicle report that is "ma[d]e" or "file[d]."  The plain language of section 10501 does not require that the report be in writing.  Although no published case has interpreted section 10501, its use of the phrase "make or file" a false report indicates an intent to include both an oral report — which can be "ma[d]e" — and a written report — which can be "file[d]."

The People contend that when applying the *Williamson* rule to a special statute that may be violated in two different ways, we should take into account both means of violating the statute. Defendant, on the other hand, contends that we should focus only on the phrase in Vehicle Code section 10501 that applies to the *filing* of a false vehicle theft report and we should determine whether the present conduct commonly would violate Penal Code section 115. For the reasons explained below, defendant is correct.

Our cases have applied the *Williamson* rule without giving any consideration to the circumstance that a different clause of the special statute at issue could have been violated without violating the general statute. In *Williamson* itself, the special statute at issue contained two clauses; it applied to "any person who acts in the capacity of a contractor without a license, and any person who conspires with another person to violate any of the provisions of this chapter." (Bus. & Prof. Code, former § 7030; quoted in *Williamson, supra,* 43 Cal.2d at p. 653, fn. 2.) We held that a defendant who violated the second clause could not be prosecuted under the general conspiracy statute, and we reached that conclusion without regard for the circumstance that a violation of the first clause would not violate the conspiracy statute. (*Williamson, supra,* at pp. 654-655.)

Similarly, as noted above, we concluded in *Ruster*, *supra*, 16 Cal.3d at page 699, that former section 2101 of the Unemployment Insurance Code, which made it a "misdemeanor to 'willfully make a false statement or representation or knowingly fail to disclose a material fact to obtain . . . any benefit or payment' " (*Ruster,* at p. 695, italics omitted) for unemployment insurance precluded a prosecution for forgery based on the defendant's signing a false name to his application for unemployment benefits. We held that the special statute precluded application of the general statute because the Legislature clearly contemplated that unemployment insurance fraud would be committed by forgery and "applying for

8

aid under a false identity, which entails signing eligibility questionnaires and pay certification cards with a false name, is apparently one of the most common forms of unemployment insurance fraud." (*Ruster, supra,* at p. 699.) We applied the *Williamson* rule without concern for the fact that the unemployment fraud statute could be violated by making a material omission, which would not violate the forgery statute.

Likewise, in *People v. Gilbert*, *supra*, 1 Cal.3d 475, we concluded that a special statute dealing with welfare fraud precluded prosecution for theft under the general theft statute. The welfare fraud statute contained two clauses, one applicable to persons who fraudulently obtain aid and one applicable to persons who fraudulently attempt to obtain aid. We applied the *Williamson* rule to a defendant who had fraudulently obtained aid, even though the alternative means of violating the statute would not constitute theft. (*Gilbert, supra,* at pp. 479-481.)

The People rely on two Court of Appeal cases to support its argument that if the specific statute can be violated in two different ways, only one of which violates the general statute, the *Williamson* rule does not apply. In *People v. Chardon* (1999) 77 Cal.App.4th 205, the defendant was stopped for a traffic violation and signed her sister's name to a notice to appear. She was prosecuted under Penal Code section 529, which prohibits false impersonation. She argued that prosecution under that statute was precluded by a special statute, Vehicle Code section 40504, subdivision (b), which prohibits signing a false or fictitious name on a promise to appear. The court rejected the defendant's argument, reasoning that whereas signing a *false* name — someone else's name — on a promise to appear would commonly violate both statutes, signing a *fictitious* name on the promise to appear is an equally common violation of the Vehicle Code statute that does not result in a violation of the Penal Code statute. (*People v. Chardon*, *supra*, at p. 214.) Thus, the court concluded that a violation of the

9

special statute would not necessarily or commonly result in a violation of the more general statute.

In *People v. Powers* (2004) 117 Cal.App.4th 291 (*Powers*), the defendant filed a false fishing activity report with the Department of Fish and Game. He was charged with violating Penal Code section 115 which, as noted above, prohibits the offering of a false instrument for filing in a public office. The defendant argued that prosecution under section 115 was precluded because his conduct violated a regulation requiring him to keep and submit a complete and accurate record of fishing activities, and a violation of that regulation constituted a misdemeanor. (Cal. Code Regs., tit. 14, § 190; Fish & G. Code, § 12000, subd. (a).) The court rejected defendant's argument, concluding that a violation of the recordkeeping regulation would not commonly result in a violation of section 115, for two reasons. First, section 115 required that the defendant "knowingly" offer a false instrument, whereas the regulation contained no scienter requirement. Thus, a person could be guilty of the misdemeanor offense if he or she unknowingly filed an inaccurate fishing report. Second, section 115 required filing a false document, whereas a person could be guilty of the misdemeanor offense for failing to file a fishing report altogether. In this situation, the person would be guilty of violating the special statute but would not have violated section 115. (*Powers*, *supra*, at p. 299.)

It is debatable whether these appellate court cases actually support the approach the People urge us to adopt, because, as noted earlier, each situation requires a determination of legislative intent based on "the entire context" of the statutes at issue. (*Jenkins*, *supra*, 28 Cal.3d at p. 502.) In any event, our own decisions, described earlier, are inconsistent with the People's position. The sole focus in *Williamson*, *Ruster*, and *Gilbert* on the clause in the special statute that is reflected in the general statute supports defendant's position: even though the

10

*making* of a false *oral* report of vehicle theft would not violate the general statute, our analysis should focus on the question of whether the *filing* of a false vehicle theft report would necessarily or commonly result in a violation of Penal Code section 115.

This approach is consistent with the rationale underlying the *Williamson* rule. In adopting a specific statute, the Legislature has focused its attention on a particular type of conduct and has identified that conduct as deserving a particular punishment. Consequently, we infer that the Legislature intended that such conduct should be punished under the special statute and not under a more general statute which, although broad enough to include such conduct, was adopted without particular consideration of such conduct. Whether the Legislature has addressed the specific conduct in a separate statute rather than in a clause or subdivision of a statute that includes other conduct is not determinative in our effort to discern the Legislature's intent.

### 2. *Does a False Vehicle Theft Report Necessarily or Commonly Constitute a False Instrument?*

The People contend that even if our analysis focuses on the filing of a false written report, such conduct would not necessarily or commonly violate Penal Code section 115 because a written vehicle theft report is not necessarily an "instrument" within the meaning of section 115. The People assert that the vehicle theft report in the present case qualifies as an instrument only because it includes certain formalities — specifically, it was signed by defendant under penalty of perjury. On the other hand a less formal document (such as a handwritten letter, not signed under penalty of perjury), according to the People, would not constitute an "instrument." Thus, the People argue, the Legislature did not intend to

11

preclude the more severe punishment for the filing of a false vehicle theft report that does constitute an "instrument."[1]  Defendant, on the other hand, contends that under the definition of "instrument" established in recent Court of Appeal decisions, any written vehicle theft report constitutes an instrument.

There currently is no precise, generally accepted definition of the term "instrument" for purposes of Penal Code section 115.  Early decisions interpreted the term narrowly.  *People v. Fraser* (1913) 23 Cal.App. 82, 85 (*Fraser*), defined an instrument, as used in section 115, as a written and signed agreement, "delivered by one person to another, transferring the title to or creating a lien on real property, or giving a right to a debt or duty."  Cases following *Fraser* concluded that a variety of documents not meeting this definition were not "instruments" within the meaning of section 115.  (See, e.g., *People v. Fox* (1977) 73 Cal.App.3d 178, 180-182 [affidavit of voter registration]; *People v. Olf* (1961) 195 Cal.App.2d 97, 101 [application for a permit to issue securities]; see also *People v. Wood* (1958) 161 Cal.App.2d 24, 28-29 [questioning whether documents containing false information filed with the Department of Motor Vehicles were instruments under § 115, but holding that even if they were, prosecution under § 115 was precluded by special Veh. Code section making the filing of such documents a misdemeanor].)

More recent cases construing Penal Code section 115, however, have rejected *Fraser*'s definition and have expanded the meaning of "instrument" to

---

[1]     The People also suggest that because defendant's conduct in signing the report under penalty of perjury makes her crime more egregious than that of a person who submits a false report without a signature under penalty of perjury, the greater punishment is justified.  We do not address the entirely different issue of whether the filing of a false vehicle theft report could be the basis of a prosecution under Penal Code section 118, the statute that specifically addresses perjury, if the elements of that offense were established.  (Cf. *Jenkins*, *supra*, 28 Cal.3d 494.)

include a broader range of documents that are filed or registered with a public entity. (See, e.g., *People v. Hassan* (2008) 168 Cal.App.4th 1306, 1315-1316 [confidential marriage certificates]; *Powers, supra,* 117 Cal.App.4th at pp. 294-295 [fishing activity records filed with Dept. of Fish & Game]; *People v. Tate* (1997) 55 Cal.App.4th 663, 667 [work referral forms documenting hours worked by probationer on community service project]; *People v. Parks* (1992) 7 Cal.App.4th 883, 885 [temporary restraining order]; *Generes v. Justice Court* (1980) 106 Cal.App.3d 678, 682 [deed filed by defendant, purporting to convey an easement to herself].)

These cases have rejected *Fraser's* restrictive definition of "instrument" without attempting to create an alternative, comprehensive definition of that term. (See, e.g., *People v. Parks*, *supra*, 7 Cal.App.4th at p. 887 ["Whatever else may be meant by the word 'instrument,' on these facts we find that protection of judicial and public records such as the documents in this case was clearly within the legislative intent of section 115."].) Defendant cites a definition that was quoted, but not explicitly adopted, in *Powers*, *supra*, 117 Cal.App.4th at page 297: a document is an instrument if " 'the information contained in the document is of such a nature that the government is required or permitted by law, statute or valid regulation to act in reliance thereon; or . . . the information contained in the document materially affects significant rights or duties of third persons, when this effect is reasonably contemplated by the express or implied intent of the statute or valid regulation which requires the filing, registration, or recording of the document.' ([*State v. Price* (Wn. 1980) 620 P.2d 994,] 999.)" The People, on the other hand, cite other definitions that also were quoted, but not explicitly adopted, in *Powers, supra,* at pages 294-295: an instrument is "a 'formal legal document whereby a right is created or confirmed, or a fact recorded; a formal writing of any

13

kind . . . drawn up and executed in technical legal form, so as to be of legal validity.' (Oxford English Dict. (2d ed. CD-ROM 1994)."[2]

Although it has been observed that "the word [instrument] is usually limited to more formalized documents" (*Powers*, *supra*, 117 Cal.App.4th at p. 294), no case has identified what formalities are required in order to qualify a document as an instrument. Rather, in deciding whether Penal Code section 115 applies, the more recent cases have focused on the purpose of the statute, which is the "protection of judicial and public records." (*People v. Parks*, *supra*, 7 Cal.App.4th at p. 887; see also *People v. Tate*, *supra*, 55 Cal.App.4th at p. 667.)[3] The People do not identify what formalities would be required, at a minimum, to render a vehicle theft report an instrument, but take the position that a signature under penalty of perjury is sufficient. The People's position is that as long as some forms of vehicle theft reports — such as, for example, a handwritten note not presented under penalty of perjury — would be considered too informal to qualify as instruments, the *Williamson* rule does not apply.

---

**2**    The jury instructions given in defendant's case referred to a "false document," and did not use the term "instrument." (See 2 Judicial Council of Cal., Crim. Jury Instns. (2011) Related Issues to CALCRIM No. 1945, Meaning of Instrument, p. 53 ["Modern cases have interpreted the term 'instrument' expansively, including any type of document that is filed or recorded with a public agency that, if acted on as genuine, would have the effect of deceiving someone"].)

**3**    For example, in *Powers*, *supra*, 117 Cal.App.4th at page 297, the court reasoned that legally mandated fishing records filed with the Department of Fish and Game should be considered instruments because the department relies upon them to set fishing limits and manage fisheries. In *People v. Hassan*, *supra*, 168 Cal.App.4th at page 1316, the court concluded that confidential marriage certificates are instruments "given the requirement that they be recorded, their importance, and the vast legal consequences that flow from them."

14

We need not resolve the question of how the term "instrument" should be defined in order to resolve the issue before us. Even assuming, as the People contend, that a certain level of formality is necessary to render a vehicle theft report an instrument, the filing of a false vehicle theft report would *commonly* violate Penal Code section 115. The form used for the written report in the present case, CHP form No. 180, calls for a signature under penalty of perjury. Although the record does not reveal how frequently the form is used, the form itself states that it is "furnished to all peace officers by the California Highway Patrol," presumably to provide a uniform format for the filing of such reports. The deputy sheriff who took the report from defendant testified that he would fill out such a form whenever someone reported a stolen vehicle. We may reasonably infer that other law enforcement agencies routinely use this form or a similar one.

The present case is analogous to *Ruster*, *supra*, 16 Cal.3d 690. In *Ruster* we held that a prosecution for forgery was precluded by a specific statute that made it a misdemeanor to make a false statement or representation to obtain any unemployment insurance payment. Although this provision in the unemployment insurance fraud statute could be violated without committing a forgery, we concluded that "applying for aid under a false identity, which entails signing eligibility questionnaires and pay certification cards with a false name, is apparently one of the most common forms of unemployment insurance fraud." (*Id.* at p. 699.) Here, even if a false vehicle theft report may on occasion be filed in other, less formal formats, it seems safe to assume that the filing of CHP form No. 180 or a comparable form is one of the most common means of violating Vehicle Code section 10501.

Consequently, the filing of a false vehicle theft report in violation of Vehicle Code section 10501 would commonly result in a violation of Penal Code section 115. Accordingly, under the *Williamson* rule, we infer that the Legislature,

15

in specifying that such conduct constitutes a misdemeanor, intended to create an exception to the felony punishment specified in the more general statute. It follows that defendant should not have been charged with violating section 115 and her conviction on that charge must be reversed.[4]

### III. Conclusion

The judgment of the Court of Appeal affirming defendant's conviction on count I is reversed.

CANTIL-SAKAUYE, C. J.

WE CONCUR:

KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
*HUFFMAN, J.P.T.

---

[4] Because defendant's conviction must be reversed, we need not reach the issue of whether defendant's prosecution under Penal Code section 115 is also precluded by Vehicle Code section 20.

* Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Murphy

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 180 Cal.App.4th 905
**Rehearing Granted**

_____

**Opinion No.** S180181
**Date Filed:** July 7, 2011

_____

**Court:** Superior
**County:** San Bernardino
**Judge:** Bryan Foster

_____

**Counsel:**

Helen S. Irza, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Meredith A. Strong, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Helen S. Irza
Law Offices of Helen Simkins Irza
3525A Del Mar Heights Rd. #216
San Diego, CA  92130
(858) 366-2680

Meredith A. Strong
Deputy Attorney General
110 West A Street, Suite 1100
San Deigo, CA  92101
9619) 645-2297