Filed 1/12/26 (unmodified opinion attached)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ADAM RAFAEL JIMENEZ,<br><br>    Defendant and Appellant. | F087827<br><br>(Super. Ct. No. CRF73430)<br><br>**ORDER MODIFYING OPINION**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

Pursuant to California Rules of Court, rule 8.264(c), it is ordered that the partially published opinion filed herein on December 29, 2025, be modified in the following particulars:

1.  The sentence commencing at the bottom of page 10 with "The jury" and ending at the top of page 11 with "someone else," the word "CACI" is changed to "CALCRIM" so the sentence reads:

     The jury here was provided with a definition of malice as approved in CALCRIM No. 2900, which defines "maliciously" as "when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to annoy or injure someone else."

     There is no change in the judgment.

PEÑA, J.

WE CONCUR:

LEVY, Acting P. J.

MEEHAN, J.

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADAM RAFAEL JIMENEZ,<br><br>    Defendant and Appellant. | F087827<br><br>(Super. Ct. No. CRF73430)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tuolumne County. Laura Leslie Krieg, Judge.

Larenda R. Delaini, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland and Lance E. Winters, Chief Assistant Attorneys General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Eric L. Christoffersen, Ian Whitney, and Jesica Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III. of the Discussion.

Defendant Adam Rafael Jimenez was found guilty by a jury of vandalism and damaging jail property. He appeals, asserting that given the amount of damage to the jail, neither the felony vandalism conviction nor the victim restitution order is supported by substantial evidence. In supplemental briefing, defendant also contends the felony vandalism conviction must be reversed because a more specific statute prohibits his conduct. The People dispute defendant's first two contentions but concede error on the issue identified in supplemental briefing. We find substantial evidence supported the amount of damage for purposes of the felony vandalism conviction. Despite this, we reverse defendant's felony vandalism conviction, reverse the victim restitution order, and remand for a full resentencing and a new restitution hearing.

## PROCEDURAL HISTORY

On December 1, 2023, the Tuolumne County District Attorney filed an information charging defendant with vandalism in an amount over $400 (Pen. Code, § 594, subd. (a); count 1); and damaging a prison or jail (§ 4600, subd. (a); count 2). (Undesignated statutory references are to the Penal Code.) The information also alleged defendant had suffered one prior strike conviction (§§ 667, subds. (b)–(j), 1170.12), was statutorily ineligible for probation (§ 1203, subd. (e)(4)), and had multiple aggravating sentencing factors (Cal. Rules of Court, rule 4.421).

On January 24, 2024, the jury found defendant guilty of both charges and found the amount of damage was over $400. On February 26, 2024, the trial court sentenced defendant to six years (the upper term of three years doubled due to the prior strike conviction) on count 1. The court also sentenced defendant to six months on count 2 but stayed this sentence pursuant to section 654. The court ordered victim restitution in the amount of $1,980.83.

Defendant filed a timely notice of appeal on March 28, 2024.

2.

## FACTUAL SUMMARY

On November 9, 2023, defendant was being held in a cell, alone, at the Tuolumne County jail. A deputy sheriff saw defendant pacing back and forth and noted he appeared angry and irritated. Defendant then hit the cell window with a long broom handle, causing the window to crack from top to bottom; he surrendered the object upon request. Given the extensive damage, the window needed to be replaced. A staff services analyst for the Tuolumne County facilities department testified the actual cost to purchase the window was $245.47, and the cost to install was $161.97, totaling $407.44.

Following the prosecutor's presentation of evidence at trial, defense counsel moved for a judgment of acquittal of the felony vandalism charge, contending defendant caused less than $400 in damage because the installation costs should not be included in the damages calculations. The trial court denied the motion, finding substantial evidence supported the damage was over $400 because of the combined purchase and installation costs. Defendant was found guilty on both counts.

At sentencing, the prosecutor pointed out the probation report incorrectly listed the damage to the jail on count 2 as a felony and incorrectly assessed the damages as exceeding $950. She argued it should be listed as a misdemeanor because the evidence did not show the damage exceeded this amount, and the People did not proceed on such a theory. The court agreed and amended the probation report to reflect that count 2 was a misdemeanor. Defense counsel then argued a sentence of six years was unreasonable given the damages were just over $400. The court noted the sentence was based on aggravating factors: defendant's increasingly serious prior convictions and prior strike. Then, and without objection, the court ordered defendant pay $1,980.83 in victim restitution to the county. The probation report recommended this amount based on an estimate to replace the window provided by the Tuolumne County Sheriff's Office; the report noted the amount "may not reflect testimony and evidence presented during [t]rial."

## DISCUSSION

### I.  Substantial evidence supports the damages determination under section 594.

Defendant first argues there was insufficient evidence to support his felony vandalism conviction because he did not cause $400 or more in damage to the cell window.  Even though we reverse defendant's felony vandalism conviction because he could only be tried on the section 4600 charge (see part II., *post*), we address this first point in order to clearly rule on defendant's argument raised in his supplemental brief.

#### A.  Standard of Review

In considering a challenge to the sufficiency of the evidence, we " ' " 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)  We presume " ' "the existence of every fact the [jury] could reasonably deduce from the evidence." ' " (*People v. Lee* (2011) 51 Cal.4th 620, 632.)  "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  The appellant carries the burden of establishing that the evidence was insufficient to sustain a conviction.  (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.)

#### B.  Analysis

Section 594, subdivision (a), provides:  "[e]very person who maliciously [defaces with graffiti or other inscribed material, damages, or destroys] any real or personal property not his or her own . . . is guilty of vandalism."  (See *In re Leanna W.* (2004) 120 Cal.App.4th 735, 743 ["To commit vandalism . . . , an individual must maliciously damage or destroy any real or personal property not his or her own."].)  If the amount of the "defacement, damage, or destruction" is $400 or more, the offense is punishable as a

4.

felony or misdemeanor, but if less than $400, as only a misdemeanor. (§ 594, subd. (b)(1), (2)(A).)

Section 594 does not identify a method to assess the amount of damage, but courts interpreting the statute have noted a correlation with principles of restitution. For example, in *In re A.W.*, the court observed how section 594's requirement to "prove the amount of 'defacement, damage, or destruction[]' . . . include[d] the cost of repairing or replacing the vandalized property." (*In re A.W.* (2019) 39 Cal.App.5th 941, 950 (*A.W.*).) The *A.W.* court found analogous our Supreme Court's interpretation of another restitution statute that permitted consideration of repair costs. (*Ibid.*, citing *Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 308 (*Luis M.*).) The core principle relied upon by these and other courts is that there must be a " 'factual nexus' between the amount sought and the evidence of [the defendant's] actual conduct." (*A.W.*, *supra*, at p. 948; see *Luis M.*, *supra*, at p. 309; *In re Kyle T.* (2017) 9 Cal.App.5th 707, 716 (*Kyle T.*).)

Here, such a " 'factual nexus' " exists between defendant's conduct and the window installation costs. (*A.W.*, *supra*, 39 Cal.App.5th at p. 948.) While defendant was detained in a cell at the Tuolumne County jail, a deputy sheriff saw defendant hit the cell window with a long broom handle, causing it to crack from top to bottom. Given the extensive damage, the window needed to be replaced. A staff services analyst for Tuolumne County facilities department testified the actual cost of the window was $245.47, and the cost to install the window was $161.97, totaling $407.44. We concur with those courts that have found section 594's damages requirement includes any "cost of repairing or replacing the vandalized property." (*A.W.*, at p. 950.) Thus, substantial evidence supports the finding that the amount of damage was over $400. (§ 594, subd. (b)(1).)

Defendant contends the court should not rely on the rationale expressed in *Luis M.*, *A.W.*, and *Kyle T.* because these cases concern graffiti, and an entirely different remediation scheme exists for graffiti vandalism. Defendant is correct the Legislature

5.

authorized a remediation scheme for graffiti vandalism that includes recovery of labor costs. (See Welf. & Inst. Code, § 742.10 et. seq.) However, as the People note, nothing in the statute or these cases indicate labor costs must be *excluded* unless graffiti-based vandalism is involved. (§ 594.) On the contrary, the language from the cited cases indicates the "nexus" principle applies to section 594 non-graffiti vandalism cases. (See *A.W.*, *supra*, 39 Cal.App.5th at p. 948 [noting the " 'factual nexus' " principle applies to the general restitutionary scheme].)

Insofar as defendant contends the disposition in *Luis M.*, *A.W.*, and *Kyle T.* support a reversal here, we find these cases distinguishable. In each case, the reversals were premised on the fact the evidence of damages were mere averages that lacked a nexus to the defendants' specific conduct. (See *Luis M.*, *supra*, 59 Cal.4th at p. 309 [noting the court "based its estimate on an *average of all costs* of graffiti cleanup rather than a rational estimate of costs occasioned by [the defendant's] conduct"]; *A.W.*, *supra*, 39 Cal.App.5th at p. 947 [reversing § 594 conviction because the damages evidence was based on "an average remediation cost," improperly "included law enforcement costs," and relied on a "flawed methodology in calculating its average costs"]; *Kyle T.*, *supra*, 9 Cal.App.5th at p. 713 [reducing § 594 conviction to a misdemeanor because of a lack of "individualized proof, specific to the facts of this case, that the actual amount of damage that [the defendant's] vandalism caused reached the $400 threshold necessary to sustain the felony vandalism count"].) In contrast, defendant's conviction here was based on the actual cost of the window and actual cost to install this window, and these amounts were supported by the testimony of the county facilities analyst.

For these reasons, we find substantial evidence supports the felony verdict because the vandalism damage exceeded the $400 threshold for purposes of defendant's section 594 conviction. (*People v. Lee*, *supra*, 51 Cal.4th at p. 632.)

**II.     Defendant could not be prosecuted under the general vandalism statute.**

Defendant contends in supplemental briefing that his conviction for felony vandalism must be reversed because his prosecution under section 594 was barred due to the Legislature's enactment of a more specific statute:  section 4600.  Defendant did not move to dismiss the felony vandalism count at any point, which would have been the proper method for him to raise this challenge.  (See, e.g., *People v. Jenkins* (1980) 28 Cal.3d 494, 499.)  Defendant appears to argue that we can and should reach the merits of this claim, despite his failure to move for dismissal below, because:  (1) his resulting sentence on the felony vandalism count constituted an unauthorized sentence, i.e., one that cannot be lawfully imposed under any circumstance in the particular case (*People v. Scott* (1994) 9 Cal.4th 331, 354); (2) the issue is a pure question of law based on undisputed facts, and so is one we can reach despite the absence of an objection (*People v. Yeoman* (2003) 31 Cal.4th 93, 118).  Defendant also argues that if we find his argument forfeited, counsel was ineffective for failing to raise the issue.

In a supplemental response brief, the People do not argue forfeiture, agree the merits can be reached because the sentence was unauthorized, and concede error.

We concur.

**A.     Standard of Review**

Despite defendant's failure to preserve the issue below, we exercise our discretion to reach the issue on its merits.  (*People v. Williams* (1998) 17 Cal.4th 148, 162, fn. 6 [an appellate court has authority to reach a forfeited claim]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments]; see *People v. Henry* (2018) 28 Cal.App.5th 786, 791 & fn. 3 [reviewing *Williamson* argument (*In re Williamson* (1954) 43 Cal.2d 651 (*Williamson*)) on appeal despite the defendant's failure to raise the issue before the trial court in order to forestall an ineffective assistance claim, among other

7.

reasons]; see also *People v. Harper* (2020) 44 Cal.App.5th 172, 185, fn. 12 [same, concurring with *People v. Henry*, *supra*, 28 Cal.App.5th 786].)

**B.    Analysis**

Defendant's argument in supplemental briefing is premised on a doctrine referred to as the *Williamson* rule, based on our Supreme Court's decision in *Williamson*, *supra*, 43 Cal.2d at page 654.  Our Supreme Court has summarized the rule as follows:

> "[I]f a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute.  In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be prosecuted under either statute.  [Citation.]  'The rule is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict.'  [Citation.]  'The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent.  The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply.  Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and "requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision . . . ." ' "  (*People v. Murphy* (2011) 52 Cal.4th 81, 86 (*Murphy*).)

"Absent some indication of legislative intent to the contrary, the *Williamson* rule applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.' "  (*Murphy*, *supra*, 52 Cal.4th at p. 86.)  The second part may apply " 'even though the elements of the general statute are not mirrored on the face of the special statute.' "  (*Id.* at p. 87; see *People v. Woods* (2025) 109 Cal.App.5th 985, 998 [deriving from *Williamson* and its progeny that the doctrine applies when there is "extensive overlap" between the statutes or "where the special statute identifies highly specific conduct," observing that the "touchstone must be legislative intent," "whether

8.

the Legislature intended a lighter punishment for conduct that satisfies the more specific statute"].)

In *People v. Gilbert* (1969) 1 Cal.3d 475, 481, the court found a prosecution for theft was barred by a special statute prohibiting use of false statements to obtain welfare benefits, finding that "any conduct which violated [the welfare fraud statute] would also constitute a violation of the theft provision of the Penal Code." In *Murphy*, the court reversed the defendant's conviction for "procuring or offering a false or forged instrument for filing or recording" (*Murphy*, *supra*, 52 Cal.4th at p. 86; see § 115, subd. (a)), finding it was precluded by the more specific statute making it "unlawful for any person to make or file a false or fraudulent report of theft of a vehicle required to be registered under this code with any law enforcement agency with intent to deceive" (Veh. Code, § 10501, subd. (a)). (*Murphy*, *supra*, at pp. 85–86, 95.) The *Murphy* court found a violation of the special statute would "commonly result" in a violation of the general statute, thus inferring "that the Legislature, in specifying that such conduct constitutes a misdemeanor, intended to create an exception to the felony punishment specified in the more general statute." (*Id.* at pp. 94–95.)

Conversely, in *People v. Watson* (1981) 30 Cal.3d 290, the court affirmed the defendant's conviction for second degree implied malice murder based on a fatal drunk-driving automobile collision, despite the defendant's argument that he could only be convicted of vehicular manslaughter under section 192. The defendant argued that because section 192 specifically addressed killing while driving a vehicle, the Legislature must have intended to prohibit prosecution for murder, a more general statute that addressed a broad range of unlawful killings. (*Watson*, at pp. 293–294, 295–296.) The court rejected application of the *Williamson* rule because a murder conviction required a finding of malice, while vehicular manslaughter required only gross negligence. (*Id.* at p. 296.) Thus, the court reasoned "a violation of the vehicular manslaughter statute would not necessarily or commonly result in a violation of the general murder statute,"

9.

implying the Legislature must have intended to punish malice killings more severely. (*Ibid.*; see *People v. Mullins* (2018) 19 Cal.App.5th 594, 608 [finding robbery convictions not precluded by more specific identity theft statute because each element of robbery statute did not correspond to an element of the identity theft statute, and because violations of the identity theft statute would not commonly result in violation of the robbery statute due to the robbery statute's force or fear requirement].)

Here, application of the *Williamson* test, as described in *Murphy*, supports defendant's argument that he could not be prosecuted under section 594 for damaging the Tuolumne County jail cell window because a section 4600 conviction would commonly or necessarily result in a section 594 conviction. Most tellingly, section 594 expressly and unambiguously limits its scope to property damage occurring "in cases other than those specified by state law . . . ." (*Id.*, subd. (a).) Section 4600, subdivision (a) specifically prohibits destruction of "any jail, prison, or any public property in any jail or prison," and section 594, subdivision (a) prohibits destroying "any real or personal property not his or her own." It is axiomatic that the cell window of the Tuolumne County jail is not defendant's real or personal property.

Further, though the statutes use different terms to describe the requisite mental states, with section 594, subdivision (a) requiring a malicious act and section 4600, subdivision (a) requiring a willful and intentional act, these terms are synonymous for purposes of our analysis. (See, e.g., *People v. Woods*, *supra*, 109 Cal.App.5th at p. 999 [finding the *Williamson* rule applicable despite the fact the general and specific statutes used different wording because, functionally, the requisite mental states were the same].) The Penal Code defines " '[m]alice' " and " 'maliciously' " in part on mere "intent" grounds, calling for proof of "an intent to do a wrongful act." (§ 7, subd. (b)(4); see *People v. Moore* (2018) 19 Cal.App.5th 889, 895 [finding the term " 'maliciously' " to only require a general intent to do the proscribed act because "the term 'maliciously' does not import any further specific intent or mental state"].) The jury here was provided with

10.

a definition of malice as approved in CACI No. 2900, which defines "maliciously" as "when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to annoy or injure someone else." Further, the Penal Code defines " '[w]illfully,' when applied to the intent with which an act is done or omitted, [as implying] simply a purpose or willingness to commit the act, or make the omission referred to." (§ 7, subd. (b)(1); see *People v. Moore*, *supra*, 19 Cal.App.5th at p. 896 [comparing § 594 to the arson statute in construing " 'maliciously,' " and noting that "even willfulness does not make the crime one of specific intent, as [this] requires nothing more than a general intent to willfully—as opposed to accidentally—commit the proscribed, and statutorily wrongful, act"].)

Thus, as defendant's case perfectly illustrates, a conviction for "willfully and intentionally" destroying jail property under section 4600, subdivision (a) would necessarily and commonly result in a conviction for maliciously (i.e., intentionally and not by accident) destroying "any real or personal property not his or her own" under section 594, subdivision (a). (*Murphy*, *supra*, 52 Cal.4th at p. 86 ["In its clearest application, the [*Williamson*] rule is triggered when a violation of a provision of the special statute would inevitably constitute a violation of the general statute."]) Further, as this case illustrates, a conflict exists between the statutes given the differing thresholds between the two statutes for each to rise to a felony. (§ 594, subd. (b)(1), (2)(A) [setting punishment as either a felony or misdemeanor if the amount of the "defacement, damage, or destruction" is $400 or more, but allowing only for a misdemeanor if the damage is less than $400]; § 4600, subd. (a) [setting the punishment as a misdemeanor if the damage is $950 or less and as a felony if above].) Thus, we take as a " 'powerful indication' " that the Legislature intended defendant's conduct to be prosecuted exclusively under the special statute: section 4600. (*Murphy*, *supra*, 52 Cal.4th at p. 86.) Defendant's conviction under section 594, subdivision (a) must be reversed, and the case

11.

must be remanded for sentencing under section 4600, subdivision (a). (See *Murphy*, at p. 86.)

## III.    Direct victim restitution.[*]

Defendant contends the trial court abused its discretion by imposing $1,980.83 in direct victim restitution when the loss was only $407.44. He also contends that if the court finds this issue forfeited, defense counsel was ineffective in failing to raise the issue. We agree with defendant and, despite his failure to preserve the issue below, will exercise our discretion to reach the issue on its merits. (See *People v. Williams*, *supra*, 17 Cal.4th at p. 162, fn. 6 [an appellate court has authority to reach a forfeited claim]; *People v. Crittenden*, *supra*, 9 Cal.4th at p. 146 [reviewing court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments].) Consequently, we reverse the victim restitution order and remand for reconsideration.

### A.    Standard of Review

We review a trial court's restitution order for abuse of discretion. (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498 (*Mearns*).) " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " (*Id*. at p. 499.)

### B.    Analysis

Article I, section 28, subdivision (b)(13) of the California Constitution states: "(A) It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer. [¶] (B) Restitution shall be ordered from the convicted [persons] in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." Section 1202.4, subdivision (a)(1) states: "It is the intent of the Legislature that a victim

---

[*] See footnote, *ante*, page 1.

of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (See *People v. Cortez* (2010) 189 Cal.App.4th 1436, 1442 [reminding that "all three categories of offenses[, i.e., felonies, misdemeanors, and infractions,] are considered 'crime[s] or public offense[s]' "].)

In making a restitution order, the trial court must base its determination "on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) To the extent possible, the restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (*Id.*, subd. (f)(3).) The court's discretion in setting the amount of restitution is broad. (*People v. Baker* (2005) 126 Cal.App.4th 463, 470.) A restitution order is not, however, intended to provide the victim with a windfall. (*People v. Millard* (2009) 175 Cal.App.4th 7, 28 (*Millard*).) Victims are only entitled to an amount of restitution to make them whole, but nothing more, from their actual losses arising out of the defendant's criminal behavior. (See *People v. Fortune* (2005) 129 Cal.App.4th 790, 795–796.) " '[T]he trial court must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*Mearns*, *supra*, 97 Cal.App.4th at p. 498.)

Here, we find a lack of a factual basis or rational method to support a restitution award of $1,980.83. (*Mearns*, *supra*, 97 Cal.App.4th at p. 498.) A central issue in the case at trial was the amount of damage done by defendant to the cell window. The county services analyst testified the actual cost of the window was $245.47, and the cost to install the window was $161.97, totaling $407.44. The court denied defendant's motion for judgment of acquittal of the felony charge based on arguments that the damage was less than $400, specifically citing the $407.44 in support. The parties cited the $407.44 amount in their closing arguments. At sentencing, the court amended the

13.

probation report because it incorrectly listed the amount of damage was over $950. In fact, the only time the $1,980.83 amount appears in the record is in the probation report, which explicitly noted was an estimate by the sheriff's office and "may not reflect testimony and evidence presented during [t]rial." The People point to no other evidence supporting this amount, instead relying on the trial court's broad authority and counsel's failure to object. Given this, the trial court appears to have chosen $1,980.83 as the amount of restitution without a factual basis for doing so. (*Mearns*, *supra*, 97 Cal.App.4th at p. 499 [there must be " 'a factual and rational basis for the amount of restitution ordered by the trial court' "].) An award of restitution of almost $2,000 would inappropriately provide a windfall to the county. (*Millard*, *supra*, 175 Cal.App.4th at p. 26; *People v. Fortune*, *supra*, 129 Cal.App.4th at p. 795 [reminding that courts should "[limit] the amount of restitution so as to make the victim whole, but no more"].)

As such, we reverse the restitution award against defendant and remand for a new restitution hearing.

## DISPOSITION

Defendant's felony vandalism conviction under section 594, subdivision (a) is reversed, the victim restitution order is reversed, and the matter is remanded to the trial court for a full resentencing under section 4600, subdivision (a) and a new restitution hearing.

PEÑA, J.

WE CONCUR:

LEVY, Acting P. J.

MEEHAN, J.

14.