Filed 2/11/26  P. v. Langley CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br>　　　Plaintiff and Respondent,<br>v.<br><br>MATTHEW DAVID LANGLEY,<br>　　　Defendant and Appellant. | A171870<br><br>(Mendocino County<br>Super. Ct. No. 22CR02858) |

A jury convicted Matthew David Langley of perjury and offering a false or forged instrument — he forged documents and submitted them to the Department of Motor Vehicles (DMV) to transfer the victim's vehicle to himself.  On appeal, relying on *In re Williamson* (1954) 43 Cal.2d 651 (*Williamson*), he argues his conviction for offering a false and forged instrument must be reversed because he should have been charged under a more specific misdemeanor statute, Vehicle Code section 20.  He also contends the trial court made erroneous evidentiary rulings that require reversal of both convictions.  We affirm.

**BACKGROUND**

Stephen Price's wife, Margaret Price, passed away in March 2020.  At the time of her death, she held title to a 2012 Ford Escape.  She never

1

transferred title to Stephen,[1] nor did he attempt to transfer title after she passed.

In 2021, Stephen hired Langley to clear and mill trees on his property. He paid Langley approximately $25 per hour — totaling $5,100 — and allowed Langley to keep some wood. He also allowed Langley to use the Ford Escape while working on the property to transport equipment up the half-mile gravel driveway. But Stephen rejected Langley's request to obtain the car in exchange for his services. Langley later stopped working for Stephen, but he continued to use the car despite Stephen's many requests for its return. Stephen warned Langley that if the car was not returned, he would report it as stolen. Langley did not return the car, and Stephen contacted the police.

The investigating officer determined that the car was registered to Langley, not Margaret. A DMV review of the ownership registration certificate — identifying the legal owner of a vehicle — showed Langley owned the Ford Escape. The certificate of title — the document, completed under penalty of perjury, reflecting that the owner is giving up their interest in a particular vehicle — purported to bear Margaret's signatures. The signatures were dated September 15 and 17, 2021, over one year after she had passed away. A statement of facts, attached to these documents and completed by Langley under penalty of perjury, indicated the vehicle was transferred to him as an inheritance and thus exempt from any tax.

An officer contacted Langley at his home and located the Ford Escape on his property. The officer confirmed that the Vehicle Identification Number and license plate matched that of the missing car. Langley told the officer he

---

[1] For clarity, we use first names when referring to the Prices individually. We intend no disrespect.

earned the car by working for Stephen, and Stephen gave him title. He acknowledged that Margaret had passed away and admitted putting her signature on the title. The officer impounded the car.

The Mendocino County District Attorney charged Langley with perjury and offering a forged instrument. (Pen. Code, §§ 118, subd. (a), 115, subd. (a); undesignated statutory references are to this code.) The complaint also alleged he had a prior felony strike conviction of driving under the influence, with bodily injury. (§§ 1170.12, 667, subd. (e).) Before trial, the prosecution moved to impeach Langley if he testified with two prior felony convictions — a 2013 conviction for driving with a blood-alcohol level of 0.08 percent or more, causing injury (Veh. Code, § 23153, subd. (b)), with an enhancement for personally inflicting great bodily injury (former § 12022.7); and a 2019 conviction for driving under the influence with a prior felony conviction (Veh. Code, § 23152, subd. (a)). The trial court determined the two convictions were crimes of moral turpitude and thus admissible for impeachment purposes.

In his pretrial motion, Langley requested permission to impeach Stephen with several convictions — two 1970 felony convictions for burglary (former § 459), and 1977 felony convictions for robbery (§ 211), rape by threat (former § 261), and lewd or lascivious act with a child under 14 (former § 288, subd. (a)). The trial court denied the request after finding that, although these were all crimes of moral turpitude, their probative value was substantially outweighed by their prejudicial effect — the convictions were between 44 and 53 years old. It further noted there was no evidence Stephen had been anything other than law abiding since his last felony conviction.

A jury found Langley guilty of both counts, and the trial court found the prior strike allegation true. After the verdict, Langley moved for a new

3

trial, arguing he should have been charged with a violation of Vehicle Code section 20 — knowingly making a false statement in documents filed with the DMV — rather than section 115 — knowingly procuring or offering any false or forged instrument to be filed, registered, or recorded in any public office. According to Langley, the general statute includes the same conduct as Vehicle Code section 20, indicating the Legislature intended his conduct to be prosecuted only under the more specific statute. The court denied the motion. It struck Langley's prior strike and sentenced him to three years in prison for perjury, with a concurrent term of two years for offering a forged instrument.

## DISCUSSION

Langley urges us to reverse his felony conviction for offering a false or forged document because, pursuant to *Williamson*, *supra*, 43 Cal.2d 651, his conduct could only be charged under Vehicle Code section 20, a more specific misdemeanor statute. (§ 155, subd. (a); Veh. Code, § 40000.5.) Generally, prosecutors may choose to proceed under either of two statutes prohibiting the same conduct. (*People v. Cockburn* (2003) 109 Cal.App.4th 1151, 1157.) But under "the *Williamson* rule, if a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute." (*People v. Murphy* (2011) 52 Cal.4th 81, 86 (*Murphy*).) It applies when "each element of the general statute corresponds to an element on the face of the special statute" or when "it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute." (*People v. Watson* (1981) 30 Cal.3d 290, 295–296.) After independently reviewing this issue of statutory interpretation, we disagree with Langley. (*In re Charles G.* (2017) 14 Cal.App.5th 945, 949.)

4

Section 115 provides, "[e]very person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony." (§ 115, subd. (a).) Vehicle Code section 20 makes it "unlawful to use a false or fictitious name, or to knowingly make any false statement or knowingly conceal any material fact in any document filed with the [DMV] or the Department of the California Highway Patrol."

We see nothing in Vehicle Code section 20 indicating the Legislature intended to supplant section 115 when prosecuting the offering of false or forged documents to the DMV. True, section 115 is more general than Vehicle Code section 20 in that "it applies to a broader range of documents that may be filed in any public office." (*Murphy*, *supra*, 52 Cal.4th at p. 88.) But section 115 prohibits procuring or offering a forged instrument — a provision that lacks any precise counterpart in Vehicle Code section 20. (*Murphy*, at p. 88; *People v. Walker* (2002) 29 Cal.4th 577, 585–586.) And although it "is not correct to assume that the [*Williamson*] rule is inapplicable whenever the general statute contains an element not found within the four corners" of the specific law, it does not appear from the statutory context that the way Langley violated Vehicle Code section 20 "would inevitably constitute a violation" of section 115. (*People v. Jenkins* (1980) 28 Cal.3d 494, 502; *Murphy*, at p. 86.) A person violates Vehicle Code section 20 by omitting a material fact or including a false fact in a genuine instrument or document. (*People v. Molina* (1992) 5 Cal.App.4th 221, 226.) This does not necessarily and commonly result in a filing or recording of a forged instrument, i.e., a violation of section 115. (*People v. Wood* (1958) 161 Cal.App.2d 24, 27–28 ["[c]learly, no forgery was involved" for defendant

5

filing documents with DMV "containing false statements as to the dates of [car] sales"].)  Vehicle Code section 20 is, in this sense, considerably broader than section 115.  Here, Langley was charged with offering multiple documents to the DMV to record a fictitious transfer of Margaret's car and forging her signature on a transfer of title.  He was appropriately prosecuted under section 115 for offering a false or  forged instrument for filing, whether or not his conduct also violated Vehicle Code section 20.

None of Langley's cited authorities — which involve making false statements to state agencies — alter this conclusion, contrary to his assertions.  (E.g., *Murphy*, *supra*, 52 Cal.4th at p. 85 [reversing conviction under § 115 for falsely reporting car as stolen where violation of Veh. Code, § 10501 — making or filing a false report of a vehicle theft is a misdemeanor — would commonly violate § 115]; *People v. Ruster* (1976) 16 Cal.3d 690, 699 [reversing conviction for grand theft by false pretenses after concluding defendant's conduct of "applying for aid under a false identity" is "apparently one of the most common forms of unemployment insurance fraud," prohibited under the Unemp. Ins. Code].)  Here, nothing in the statutes indicates — and Langley fails to identify anything — that *forging* a transfer of title is the most common way to violate Vehicle Code section 20.  Nor is there any indication the Legislature intended to limit the penalty for forgery to a misdemeanor.  Reviewing other provisions of the Vehicle and Penal Code confirms that possessing and using counterfeit and forged driver's licenses may be prosecuted as felonies.  (§ 470a & Veh. Code, § 4463 [criminalizing forging and counterfeiting a driver's license as a felony].)  In sum, the *Williamson* rule does not bar Langley's prosecution under section 115.

Next, Langley argues the trial court abused its discretion by rejecting his request to impeach Stephen with his prior felony convictions. He further contends this ruling violated his constitutional right to present a complete defense. Generally, prior felony convictions are admissible to impeach witness credibility. (Evid. Code, § 788.) But under Evidence Code section 352, the court has the discretion to exclude evidence if it involves " 'undue time, confusion, or prejudice which outweighs its probative value.' " (*People v. Clark* (2011) 52 Cal.4th 856, 932.) A court retains broad discretion to admit or exclude impeachment evidence, and we uphold its ruling unless there was an abuse in the exercise of that discretion — an "arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.) We find no such abuse of discretion.

" 'Remoteness' or 'staleness' of prior conduct is an appropriate factor to consider in a section 352 analysis." (*People v. Harris* (1998) 60 Cal.App.4th 727, 739.) Conduct that is too remote may strongly weigh in favor of exclusion. (*Ibid*.) Stephen's last felony conviction was more than four decades ago, meeting "any reasonable threshold test of remoteness." (*People v. Burns* (1987) 189 Cal.App.3d 734, 738.) The staleness of the offenses is relevant because, as the trial court noted, he led "a blameless life in the interim." (*Harris*, at p. 739.) On this record, excluding these prior convictions was not an abuse of discretion. In light of this ordinary application of Evidence Code section 352, we conclude the court's ruling did " 'not infringe on [Langley's] due process right to present a defense.' " (*People v. Nieves* (2021) 11 Cal.5th 404, 445.)

Finally, Langley argues the trial court erred by allowing the prosecution to impeach him with two felony convictions for driving under the

influence (Veh. Code, §§ 23152, subd. (a), 23153, subd. (b)) — a 2013 conviction enhanced for personally inflicting bodily injury (§ 12022.7), and a 2019 conviction enhanced with a prior felony conviction within 10 years — after erroneously deeming them crimes of moral turpitude. (Evid. Code, § 788; *People v. Castro* (1985) 38 Cal.3d 301, 314–315 [prior felony convictions involving crime of moral turpitude admissible for impeachment].) The People concede the 2013 conviction was not a crime of moral turpitude. But resolving whether the remaining conviction was a crime of moral turpitude is unnecessary. Even assuming the court erred as to both counts, it is not reasonably probable that Langley would have obtained a more favorable result in the absence of the error. (*Castro*, at p. 319; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The prosecution's case was strong. (*People v. Castro*, *supra*, 38 Cal.3d at p. 318.) For Langley's perjury conviction, he admitted to lying on the DMV form transferring title of the vehicle — falsely stating the vehicle was a gift and that there was no purchase price. He further acknowledged lying on the statement of facts, signed under penalty of perjury, that the vehicle was an inheritance and could not be taxed. (*People v. Kim* (2024) 99 Cal.App.5th 857, 865 [perjury cases based on a false filing requires omission or misstatement of fact to be material].) For his offering a false and forged instrument conviction, he admitted placing Margaret's signature on the certificate of title directly under language stating this signature was made under penalty of perjury. Given his admissions, the exclusion of the impeachment evidence would not have resulted in a more favorable outcome. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

## DISPOSITION

The judgment is affirmed.

_____
RODRÍGUEZ, J.


WE CONCUR:


_____
TUCHER, P. J.


_____
PETROU, J.


A171870; *People v. Langley*

9